```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH DAKOTA
                      NORTHERN DIVISION
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
SIOUX RURAL WATER SYSTEM, INC.,   *         Civ. 15-1023
a Non-Profit Corporation          *
                                  *
              Plaintiff,           *
                                  *
    -vs-                           *    DEFENDANTS' STATEMENT OF
                                  *    UNDISPUTED MATERIAL FACTS
CITY OF WATERTOWN, a South Dakota *
Municipality, and WATERTOWN        *
MUNICIPAL UTILITIES, an agency of *
the CITY OF WATERTOWN,             *
                                  *
              Defendants.          *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

Pursuant to D.S.D. LR 56.1(A), the defendants, by and through their attorneys of record, set forth the following Statement of Undisputed Facts in support of their Motion for Summary Judgment.[1]

1. Sioux is a rural, non-profit water supply corporation, which was created in 1974. (Doc. 1, ¶¶10-11; Thompson 18.)

2. Rural water systems in South Dakota either take the form of 501(c) not for profit corporations or Water User Districts created pursuant to state law. (Thompson 10-11.)

3. Water User Districts created under state law submit a map of their territory to the state for approval. (Thompson 11; 102.)

---

[1] The documents exchanged during discovery in this case and deposition testimony referenced herein are attached to the Affidavit of Zachary W. Peterson ("Peterson Aff."). Deposition testimony will be referenced by the deponent's last name, followed by the corresponding page number. Documents will be referenced by their document production numbers.

4.  Water User Districts' geographic boundaries are on file with the State of South Dakota. (Thompson 102.)
5.  As a 501(c) not for profit corporation, Sioux does not have a territory map that sets geographic boundaries. (Thompson 11-12; 94; 102.)
6.  While Sioux has maps showing the location of its pipes, it has not gone a step further to establish its boundaries. (Thompson 12.)
7.  Sioux does not believe its service territory is limited by where it currently has "pipes in the ground"; rather, its general manager testified that Sioux's service territory includes any area where Sioux may be willing to put pipes in the ground based upon a customer request. (Thompson 94-96.)
8.  Since there is no defined geographical boundary, Sioux's service area changes every time it puts a new line in the ground. (Thompson 99.)
9.  In its Complaint, Sioux alleges that the City and MU have taken certain customers from Sioux's service territory. (Doc. 1, ¶14; Thompson 75-76.)
10. Sioux identifies three customers within its service territory that were previous Sioux customers that Sioux alleges were taken by the City/MU: (1) Lew's Fireworks; (2) CHS; and (3) Titan. (Thompson 76; Sioux 121.)

11. Lew's Fireworks wanted to be annexed into the City of Watertown in order to receive water service from the City in order to sustain its fire protection needs.  (Thompson 62-63.)

12. Sioux does not provide fire protection.  (Thompson 63.)

13. Sioux invoiced the City, and the City paid Sioux for amounts associated with the infrastructure Sioux had invested into Lew's as well as a figure for income Sioux would have received on the Lew's account.  (Thompson 60-62, Sioux 122-127.)

14. The CHS fertilizer plant exists within the Watertown city limits.  (Deville 9; Thompson 64.)

15. When Titan Machinery was putting up its new building, Sioux conceded that it made "no claim for the water service to the new Titan building."  (Mack 36; Thompson 70-72; Sioux 546.)

16. Sioux does not have sufficient capacity to supply Titan with its water needs.  (Thompson 72.)

17. Sioux identified the Kittelson Addition as an area where it had concerns about customers potentially becoming MU customers in the future.  (Thompson 78.)

18. MU does not currently supply water to anyone within Kittleson's addition.  (Thompson 74.)

19. Although MU has made exceptions for certain customers, MU's general policy is that it does not hook up customers outside of the Watertown city limits.  (Lehner 26, 35; Thompson 98.)

20. Correspondence between Sioux and MU establish Sioux's practice of recognizing the three mile area around Watertown city limits as being territory where the City has a right of first refusal. (Thompson 107-108; Sioux 141-142.)
21. MU's policy is that, when the City annexes property, it would not require a Sioux customer within the city limits to become an MU customer. (Deville 13-14.)
22. If an annexed customer requests that they go from Sioux to MU, MU follows state law by buying out the customer. (Deville 14.)
23. Darin Schriever was asked to determine whether Sioux could supply the water needs of some potential new customers identified in Appendix E to his report. (Schriever 55, Depo. Ex. 4.)
24. Some of these potential customers are on the east side of Watertown, and some are on the west side. (Id.)
25. Sioux does not currently have adequate facilities in place to serve the potential new west side customers listed in Appendix E of Schriever's report, and both distribution and source improvements would be needed. (Schriever 28, 57.)
26. If Sioux added customers on the west side, Sioux would not be able to meet the needs of the new customers and/or some of the existing customers until improvements are made. (Schriever 47, 54.)

27. An improvement project was underway but not yet complete as as of the time of Schriever's report. (<u>Id.</u>)
28. Both source and distribution capacity is necessary to serve a customer. (Schriever 80.)
29. The improvements will add distribution capacity, but not source capacity to the west side. (Schriever 57-58.)
30. Even with the improvements, Sioux will be unable to service all of the potential customers on the west side. (<u>Id.</u>)
31. The area studied on the west-side of Watertown is operating at or near full capacity under peak demand conditions. (Schriever 64-65.)
32. The customers identified on the east side of Watertown are all businesses, not residences. (Schriever 22.)
33. Sioux's Articles of Incorporation limit their purpose to the supply of "domestic" water. (Sioux 429-434.)
34. Sioux does not have any data about the actual usage of the east side entities. (Schriever 23.)
35. In terms of the analysis on whether Sioux can serve the east side entities, it is only considering domestic water supply for consumption or other related uses. (Schriever 25-26.)
36. From a source capacity standpoint, Sioux is capped at 30-35 new customers without doing something to increase their source capacity. (Schriever 58, 82.)

37. Plant improvements on the source capacity side are not under contract at this time. (Schriever 83.)

38. Without making capital improvements, Sioux could continue to serve their current customer base at their current demands, and it would have sufficient cash flow to pay its bills and operate. (Schriever 84-85.)

Dated this 7th day of November, 2016.

RICHARDSON, WYLY, WISE, SAUCK
& HIEB, LLP

By    /s/ Zachary W. Peterson
    Attorneys for Defendants

One Court Street
Post Office Box 1030
Aberdeen, SD 57402-1030
Telephone No. 605-225-6310
Facsimile No. 605-225-2743
email: zpeterson@rwwsh.com
       jhieb@rwwsh.com

**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for defendants, hereby certifies that on the 7th day of November, 2016, a true and correct copy of **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** was served electronically through the District Court CM/ECF filing system on:

(jcole@zdclaw.com)
(bill@zdclaw.com)
Mr. Jeffrey A. Cole
Mr. William D. Sims
Zimmer, Duncan & Cole, LLP
Attorneys at Law
5000 South Broadband Lane, #119
Sioux Falls, SD  57108

    /s/ Zachary W. Peterson

6