UNTIED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| SIOUX RURAL WATER SYSTEM, INC., a Non-Profit Corporation<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF WATERTOWN, a South Dakota Municipality, and WATERTOWN MUNICIPAL UTILITIES, an agency of the CITY OF WATERTOWN<br><br>Defendants. | Civ. 15-1023<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## SIOUX SEEKS PROTECTION UNDER § 1926(b)

The Defendants' blanket Motion and Brief claim Sioux has no protection at all from § 1926(b) for *any* of its customers within three miles of Watertown because Sioux lacks the legal right to serve any of those 464 customers[1]; that Sioux lacks the physical ability to serve any additional customers beyond their current customers on both the East Side and West Side of Watertown; and that Sioux has no damage claim because it can't serve any additional customers beyond its current customers. The Defendants

---

[1] See Defendants' Brief in Support of Summary Judgment, p. 13.

claim that Sioux is trying to use § 1926(b) as a "sword" rather than a "shield."

The Defendants' claims are detached from reality and directly contrary to federal law. Sioux is seeking protection for customers it has served for many years, customers that were served in areas years before Watertown annexed areas where Sioux had pipes in the ground and the ability to serve customers. Sioux is seeking protection for future customers in areas where it has current customers and has invested in infrastructure with pipes in the ground, long before Watertown annexed those properties. Sioux is seeking damages for the Defendants' incursion and curtailment of services under § 1926(b).

The Defendants have made several "parade of horrible" arguments claiming that Sioux is trying to use § 1926(b) as a "sword" to invade Watertown and serve any customer it wants in the City.  Sioux affirmatively states on the record here that it is not claiming a right under § 1926(b) to put a pipe anywhere within Watertown's municipal boundaries so Sioux can serve any customer it wants to.  What Sioux is trying to do here is to protect its ability to repay its federal loans, by preserving its current customers, its service territory, and recouping losses from the Defendants continuing incursions in violation of § 1926(b).[2]

---

[2] Factual citations will be made to the appropriate paragraph of Plaintiff's Additional Material Facts filed contemporaneously with this Brief and cited as "Additional Facts followed by the paragraph reference.

2

## ARGUMENT

### 1. Sioux is entitled to § 1926(b) protection because it has the legal right and physical ability to serve its current customers.

Sioux has both the legal right and physical ability to serve its current customers. This issue can be broken down to two distinct arguments.

#### A. SDCL 9-47-22 and SDCL 9-47-23 do not apply to federally indebted rural water systems.

The Defendants claim that Sioux lacks the legal right to serve *any* of its existing 464 customers within 3 miles of Watertown—in other words, Sioux is serving those 464 customers *illegally*. Defendants claim that they have the power under SDCL 9-47-22 and 23 to take any of the 464 current customers Sioux has within three miles of Watertown.

This is wrong, because SDCL 9-47-22 and 23 don't take away § 1926(b) rights at all. Those statutes are enabling statutes, not prohibitions. SDCL 9-47-22 and 23 don't prohibit or make it illegal for a rural water system to serve customers within the three-mile area; don't purport to take away a rural water systems' rights under § 1926(b); and don't make it illegal for rural water systems—be they water user districts or non-profit corporations—to receive federal loans and be bound by the conditions in those federal loans.

This is for a very good reason. South Dakota law makes water a

matter of "paramount interest." SDCL 46-1-1. South Dakota public policy is to encourage the provision of good drinking water to all of its citizens. SDCL 46-1-2; SDCL 46-1-4. South Dakota allows non-profit corporations to be formed to provide rural water. SDCL 47-22-4(18). South Dakota law allows non-profit corporations to borrow money from the United States, and to be bound by the terms of the loans with the United States. SDCL 47-22-59. South Dakota law by necessity takes into account the fact that rural water systems, be they water user districts or non-profit corporations, must borrow money from the United States in order to carry out what is the most essential of public functions—the provision of safe, clean drinking water.

The South Dakota Legislature is presumed to know federal law and the implications of its actions, or failure to act, in passing legislation. <u>Sanford v. Sanford</u>, 694 N.W.2d 283,289 (S.D. 2005). Under <u>Sanford</u>, the South Dakota Legislature can be presumed to have known in 1989 when SDCL 9-47-22 and 23 were passed that rural water systems were borrowing money from the United States and were bound by the terms of the loans provided by the United States, including the rights under § 1926(b) to a protected service territory.

The net result is that SDCL 9-47-22 and 23 are not intended to apply to federally indebted rural water systems at all, and provide no legal

4

authority for a municipality to take a federally indebted rural water systems' customers or territory under the statute.

### B. If SDCL 9-47-22 and SDCL 9-47-23 do apply to a federally indebted rural water system they are preempted by § 1926(b).

Assuming arguendo that the statutes do apply to a federally indebted rural water system, the statutes are preempted by § 1926(b) because they directly circumvent the purpose of § 1926(b). Sioux's submissions in support of its Motion for Partial Summary Judgment provide several examples of the Defendants using SDCL 9-47-22 and 23 to take service territory and threatening to take existing Sioux customers who request service from WMU.[3]

SDCL 9-47-22 and 23 do not *prohibit* rural water systems from serving customers within the three mile area at all, and the statutes certainly don't purport to take away rights under § 1926(b). However, if those statutes do take away rights under § 1926(b) they are preempted. In Rural Water System #1 v. City of Sioux Center, 967 F. Supp. 1483 (N.D. Iowa, 1997) the district court held that if the association had a legal right to serve the disputed customer or the area *at the time the association first became federally indebted*, then any later state law that purports to allow

---

[3] In the interest of brevity those will not be repeated here, but see generally Sioux's Brief in Support of Motion for Summary Judgment, pp. 6-12.

5

the disputed customer or service territory to be taken by a municipality is preempted by §1926(b). Id. at 1529. The district court stated:

> [T]he court is not saying that state law can be used to justify a municipality's encroachment upon disputed areas in which an indebted association is legally providing service under state law. The state law used to justify the encroachment would clearly conflict with or stand as an obstacle to, the non-encroachment provisions of § 1926(b), and consequently would be preempted by superior federal law in the form of § 1926(b). (Citations omitted). Therefore, there is express and conflict preemption of any state law that purports to take away from an indebted association any territory in which the association has both a legal and physical ability to provide service *at the time the association is first entitled to invoke the protection of § 1926(b)*.

Rural Water System #1, 967 F. Supp. at 1529 (emphasis added).

SDCL 9-47-22 and 23 were enacted in 1989, nearly 15 years after Sioux first borrowed funds from the United States, and after it was first protected by § 1926(b). The Defendants' attempt to use the two state statutes to take away Sioux's previously perfected federal right under §1926(b) to an exclusive service territory is exactly what the Rural Water System # 1 court stated was forbidden under §1926(b).

Defendants cited no case law in their Brief holding that a state statute prohibiting a rural association from serving an area that was enacted *after* a rural association had previously received a federal loan takes away the protection of § 1926(b). Sioux is unaware of any such case law, and SDCL

6

9-47-22 and 23 do nothing of the sort.

The federal case law focuses on the legal right to serve an area—i.e., does the rural association have *any* legal right to serve an area or customer under state law. The Eighth Circuit's limited case law does not discuss this issue other than to state that the rural association has to have a right under state law to serve the disputed customer and the disputed area. See Rural Water System # 1, 202 F.3d at 1038; Public Water Supply Dist., 605 F. 3d at 521.

Other circuit courts that have considered the issue have held that once the rural association is federally indebted, and is legally serving an area or customer, federal law determines the right to the service territory. In Pittsburg County Rural Dist. v. McAlester, 358 F.3d 694, 716 (10th Cir. 2004) the Tenth Circuit held that "Federal, not state law, controls the geographic scope of § 1926 protections, which attach as of the entry into the loan agreement and remain as long as the conditions for § 1926 protection discussed above – FmHA indebtedness and service 'made available' – are met." Pittsburg, 358 F.3d at 716, n.6. The court further noted that:

> When § 1926 protection attaches for a water district's service to a property within the water district's territory under the two-part test from Sequoyah, the water district has *exclusive* water service rights over that property until the water district's loan to the FmHA is paid off or the water district fails to make service "available" to the property in question.

7

Pittsburg, 358 F.3d at 716. The key teaching of Pittsburg is that once a water association is indebted and provides service, the service territory of the association "ripens" into a federally protected service territory. That territory is thereafter "sacrosanct."

In City of Madison, Miss. v Bear Creek Water Ass'n, 816 F.2d 1057 (5th Cir. 1987) the Fifth Circuit observed:

> The case at bar exemplifies the evil Congress wished to avoid. Bear Creek's affidavits showed that Madison desires to condemn 60% of its facilities and 40% of its customers, including the most densely populated (and thus most profitable) territory now served by Bear Creek. Even if fair value is paid for the lost facilities, such an action would inevitably have an adverse effect on the remaining customers of Bear Creek, in the form of lost economies of scale and resulting higher per-user costs. To allow expanding municipalities to "skim the cream" by annexing and condemning those parts of a water association with the highest population density (and thus the lowest per-user cost) would undermine Congress's purpose of facilitating inexpensive water supplies for farmers and other rural residents and protecting those associations' ability to repay their FmHA debts.

Id. at 1061.

Defendants have cited no South Dakota statutes other than SDCL 9-47-22 and 23 to support their argument that Sioux is serving customers illegally. Defendants have not cited any statutes in support of their "illegality" claim that were enacted before Sioux first became federally indebted in 1974. Defendants are trying to turn the Eighth Circuit's command that "'*any*

8

*[d]oubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory'"* on its head. Rural Water System # 1 v. City of Sioux Center, 202 F.3d 1035, 1038 (8th Cir. 2000) (emphasis added); see also Public Water Supply Dist. v. City of Lebanon, Mo., 605 F. 3d 511, 515 (8th Cir. 2010).

Defendants try to make much of the fact there is no territory map filed with the state as there is with water user districts. However, no § 1926(b) case Defendants cite, or that Sioux has been able to locate, hold that the filing of a map determines a service territory, or that non-profit corporations are not protected by § 1926(b).

Sioux does have maps of where its pipes are and the Defendants have several of those maps. The maps shown on page 9 of Defendants Brief are one of several maps of pipes in the ground Sioux has provided to the Defendants.

The key point in the cases interpreting the statute not whether a map exists but whether a rural association has a legal right to serve the customer or area under state law at the time the rural association first began providing service to the area. As discussed above, Sioux has had that right since it was first indebted to the United States, and it has that right now.

9

### 2. There are genuine issues of material fact whether Sioux has "made service available" on the East Side or the West Side.

Defendants conflate several issues in their Brief, and claim they are entitled to summary judgment. This requires Sioux to sort out the claims. The first issue is whether there are issues of fact if Sioux can provide service to 30-35 customers with existing source capacity after Sioux's recent improvement project been completed. The second issue is whether there are issues of fact if Sioux could have served, or can serve in the future, 157 customers in addition to the 30-35 Sioux can serve with existing source capacity. The third issue is whether there are issues of fact on Sioux's damage claim. Sioux will address each issue in turn.

### A. There are issues of fact on Sioux's capacity to serve 30-35 additional customers on either the East Side or the West Side of Watertown.

Defendants claim that Sioux has not made service available to the 30-35 additional customers Sioux can serve with current source capacity on either the East Side or the West Side.[4] Sioux submits it has. (Additional Facts ¶ 41) These are issues of material fact.[5]

While it is correct that Sioux's engineer testified that until the distribution improvements were made Sioux could not add additional

---

[4] Sioux assumes that the Defendants concede that Sioux has made service available to its current customers because it hasn't argued the issue in its Brief.

[5] Sioux is not conceding there is an issue of material fact as to the customers listed in its Brief in Support of its Motion for Partial Summary Judgment.

10

customers on the West Side, Defendants ignore the fact those improvements have now been completed. (Additional Facts ¶¶ 5, 43) Defendants also ignore the fact that on the East Side Sioux's engineer testified that Sioux had adequate source and distribution capacity to serve 30 to 35 new customers. (Additional Facts ¶¶ 41, 42). Defendants' own experts concede that Sioux could serve all but two businesses on the East Side. (Additional Facts ¶ 32)

The Eighth Circuit has instructed "Under the 'pipes in the ground test' used in water service cases courts examine 'whether a water association has adequate facilities within or adjacent to the area to provide service within a reasonable amount of time after a request for service is made.'" Public Water Supply Dist., 605 F.3d at 523. Other federal circuits have stated the test in nearly the same terms. See Sequoyah, 191 F.3d at 1203 *quoting* Bell Arthur, 173 F.3d at 526; Moongate Water v. Butterfield Park Mut. Domestic, 291 F.3d 1262, 1267-68 (10th Cir. 2002); Le-ax Water Dist. v. City of Athens, Ohio, 346 F.3d 701, 707 (6th Cir. 2003); Village of Grafton v. Rural Lorain County Water, 419 F.3d 562, 566 (6th Cir. 2005); Chesapeake Ranch Water v. Bd. of Com'rs, 401 F.3d 274, 279 (4th Cir. 2005).

Sioux believes that it could provide service up to 30-35 customers on either the East or West Side in a very short time as required by the "pipes in the ground test." (Additional Facts ¶¶ 30, 31) Defendants dispute that. An

11

issue of fact exists on the issue.

### B. There are genuine issues of material fact as to whether Sioux can or could have served 192 additional customers within a reasonable time after a request for service is made to customers within three miles of Watertown.

Sioux currently has the distribution capacity to serve an additional 192 customers (35 plus an additional 157) on either the East Side or the West Side. (Additional Facts ¶ 44) Sioux has the source capacity to serve 30-35 additional customers on either the East or West Side without increasing its source capacity. (Additional Facts ¶ 41) Sioux has provided testimony through its manager, engineer and its economist that it could have, would have, and will in the future, construct necessary facilities to serve customers entitled to receive water from Sioux. (Additional Facts ¶ 50) In fact, Sioux is required to do so. [6]

This is important under the "pipes in the ground" test in determining whether Sioux could provide, or could have provided, service to the area or customers within a reasonable amount of time after a request for service was made. See Public Water Supply Dist., 605 F.3d at 523.

It's important to remember that Sioux was never given the chance to serve the 192 customers it is claiming damages for. (Additional Facts ¶ 12, 30, 51) The Defendants simply took the customers and the areas. (Additional

---

[6] 7 C.F.R. § 1780.57(e) requires that "Facilities should have sufficient capacity for reasonable growth to the extent practicable."

12

Facts ¶ 51) Whether or not Sioux could have provided service to each of the 192 customers (beyond those identified in Sioux's Motion for Partial Summary Judgment) will need to be determined by the Court at trial, on a case by case basis.

Defendants have provided the Court with no Undisputed Statements of Material Fact concerning when such requests for service were made. Defendants have provided no evidence that service could not have been made by Sioux within a reasonable time after a specific request for service. Sioux believes it could have. Defendants don't. This presents an issue of fact.

### C. There are genuine issues of material fact on the issue of whether Sioux has sustained damages caused by the Defendants.

Defendants have also failed to present any Statements of Undisputed Material Fact claiming that Sioux has not suffered damages from the loss of the 192 customers. In fact, Defendants chose not to retain a damage expert or economist.

Sioux's expert economist, Rick Westbrook, has opined that Sioux has sustained an annual loss of profits of $15,588.17 by not being able to serve the 35 customers Sioux's experts believe it can currently serve. (Additional Facts ¶ 47) Westbrook has opined that Sioux will suffer a loss of profits as long as Sioux does not serve the 192 disputed customers. (Additional Facts ¶ 48)

This will lead to annual lost profits of $64,790.00 from 2013 to 2016, $64,825.52 from 2017 through 2036, and $74,377.87 from 2037 through 2049. (Additional Facts ¶¶ 48, 49) Westbrook has opined that the combined loss for all years throughout the time it takes for Sioux to pay off its federal debt is $2,325,655.00, with a present value of $1,675,476.00. (Additional Facts ¶ 48)

These damages take into account Sioux's cost of improving source capacity and the cost of providing water to each customer. In other words, these damages are the lost profit for the customers taken by the Defendants. The Defendants have chosen not to retain an economist to dispute Westbrook's damage calculations. Westbrook's calculations are consistent with those made in other § 1926(b) cases.

The Court will need trial testimony to determine if Sioux could have provided service to a particular customer (beyond those identified in Sioux's Motion for Partial Summary Judgment) within a reasonable amount of time after the request. The Court will need trial testimony to determine if Sioux is entitled to damages, and if so, the amount of those damages.

## CONCLUSION

Sioux seeks protection under § 1926(b) from incursion by the Defendants. Sioux seeks to use the protection of § 1926(b) as a shield, not a

sword. There are numerous issues of fact on the distinct claims encompassed by the Defendants' Motion that are beyond what Sioux argued in its own Motion for Summary Judgment. Sioux respectfully requests this Court deny the Defendants' Motion for Summary Judgment.

Respectfully submitted this 5th day of December, 2016.

/s/ Jeff Cole
Jeff Cole
William D. Sims
ZIMMER, DUNCAN AND COLE, L.L.P.
5000 S. Broadband Lane, Suite 119
Sioux Falls, SD 57108
(605) 361-9840
E-mail: jcole@zdclaw.com
*Attorneys for Plaintiff*