UNTIED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| SIOUX RURAL WATER SYSTEM, INC., a Non-Profit Corporation<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF WATERTOWN, a South Dakota Municipality, and WATERTOWN MUNICIPAL UTILITIES, an agency of the CITY OF WATERTOWN<br><br>    Defendants. | Civ. 15-1023<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS** |

Plaintiff, Sioux Rural Water System, Inc., by and through its attorneys of record, provide this Response to Defendants' Statement of Undisputed Material Facts, states as follows:

1.   Admit.

2.   Admit.

3.   Admit.

4.   Admit.

5.   Admit.

6.   Admit.

7.   Admit.  That Sioux has not established geographic boundary as required under South Dakota law for Water User Districts.

1

8. Admit.

9. Admit.

10. Admit.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Deny.  See Plaintiff's Additional Facts ¶¶ 6-10, 13-16.

20. Admit.

21. Deny.  See Plaintiff's Additional Facts ¶ 6-10, 13-16.

22. Admit.

23. Admit.

24. Admit.

25. Admit in part and deny in part. Admit that Sioux could not serve all 192 additional customers without source improvements. Deny that Sioux could not serve 30-35 additional customers without improving source

capacity. See also Plaintiff's Additional Facts ¶¶ 41-44.

26.     Admit in part and deny in part. Admit that Sioux could not serve all 192 additional customers without source improvements. Deny that Sioux could not serve 30-35 additional customers without improving source capacity.  The improvements to allow Sioux to serve 30-35 new customers on the West Side have been made. See also Plaintiff's Additional Facts ¶¶ 41-44.

27.     Admit that the improvements were not complete when Schriever completed his report. The improvements are complete now. See Plaintiff's Additional Facts ¶ 5.

28.     Admit.

29.     Admit.

30.     Admit, if the Defendants paragraph 30 is referring to distribution improvements.

31.     Deny. The improvements on the West Side are complete and allow Sioux to serve 30-35 additional customers without making source improvements, and 192 additional customers with source improvements. See also Plaintiff's Additional Facts ¶¶ 5, 41-44.

32.     Admit in part and deny in part. Admit that many of the customers on the East Side were businesses, but deny that all were. For

example the Terry Ingalls property is on the East Side.

    33.    Admit.

    34.    Admit.

    35.    Admit.

    36.    Admit.

    37.    Admit.

    38.    Admit.

## Plaintiffs' Additional Material Facts

The following additional material facts create genuine issues of material fact and are provided in support of Plaintiff's Brief in Response to Defendant's Motion and Brief in Support of Summary Judgment.

    1.    There are 464 Sioux customers within three miles of the current city limits of the City of Watertown. (Thompson Aff. at ¶ 16)

    2.    Sioux has continuously added and served new water users within three miles of the current city boundaries of the City of Watertown, and in and within three miles of the City of Watertown boundaries, every year since 1974. (Thompson Aff. at ¶ 17)

    3.    Sioux has had sufficient actual capacity to serve each of the 464 water users added since 1974 within three miles of the City of Watertown. Without any changes to Sioux's water production facilities, Sioux has

sufficient pipes in the ground and actual capacity to serve 30-35 additional users system-wide and in the area within the three-mile area around the City of Watertown.  (Thompson Aff. at ¶ 18 and Schriever Expert Report pp. 2-4; Burian depo. p. 49-50)

  4. Sioux has constructed projects over the years to prevent any shortfall in water supply capacity. (Thompson Aff. at ¶ 19)

  5. In the summer of 2016 Sioux completed a project to improve water pressures in the area generally between Pelican Lake and Lake Kampeska.  (Thompson Aff. at ¶ 20)

  6. The City of Watertown and Watertown Municipal Utilities have historically claimed the right to serve any area the City annexes with water. (Lehner depo. p. 38; DeVille depo. p. 21)

  7. Watertown believes that it has the right of first refusal on serving any water customer and user in any area that it annexes within three miles of the Watertown municipal boundaries. (Lehner depo. p. 38; DeVille depo. p. 21)

  8. Watertown's expectation is that it will provide water and sewer services to all facilities in an annexed area.   (Lehner depo. p. 38; DeVille depo. p. 21)

  9. Watertown's and Watertown Municipal Utilities' policy is that

Watertown has a right of first refusal on any connection that Sioux wants to make with any potential customer within three miles surrounding the City and that Sioux needs Watertown's permission to serve water users in the three-mile area. (Lehner depo. p. 38; DeVille depo. p. 21)

10. Watertown has provided water service to users in a number of those annexed areas without allowing Sioux to have the opportunity to provide water service to those annexed areas. (Thompson Aff. at ¶ 21)

11. Sioux has sufficient actual water distribution and delivery capacity within three miles of the City of Watertown to serve all of its current customers within the three mile area surrounding Watertown. (Thompson Aff. at ¶ 25; Burian depo. pp. 49-50; Scheiver Expert Report pp. 2-4)

12. Watertown has annexed numerous properties into the City that Sioux had either provided service to, or had pipes in the ground available to serve future customers. (Thompson Aff. ¶ 26)

13. When the City makes an annexation of territory, WMU typically takes any new customers in the annexed area, including customers of Sioux that have requested to become WMU customers. (Deville Depo at pp 17-18.)

14. Watertown and WMU demanded until December 4, 1996 that

Sioux sign a "Municipal Agreement" if Sioux wanted to serve a customer within 3 miles of the Watertown Municipal boundary. On December 4, 1996 the Watertown City Attorney at the time, Vincent Foley, wrote to Sioux and stated "rather than execute the agreement, the City of Watertown will elect to be governed by SDCL Chap. 9-47." From that point on, Sioux would send lists of customers and prospective customers to WMU that were within 3 miles of the city boundary. WMU would then "approve" or "deny" Sioux serving customers in that 3 miles area. (Thompson Aff. at ¶ 27)

     15.    Deville testified "if that customer [Sioux's customer in an annexed area] would ask for our service, I would go down the path that is laid out by state law." Deville further testified that WMU intends to follow state law when any Sioux customer in an annexed area requests service in the future. (Deville Depo at pp. 21)

     16.    Lehner testified that "my understanding is when we annex a customer, or we annex a property, a customer that is being served by Sioux Rural Water, we have an obligation to buy out what system is there providing service to them and pay, I believe it's 5% of gross revenues for a year." (Lehner Depo at pp 38)

     17.    In August 2012 Sioux had a pipeline on the south border of Watertown that went to a lot that had been annexed into Watertown for a

new Cenex Harvest States facility. Watertown "denied" Sioux's request to serve the new Cenex Harvest States facility, along with Sioux's attempt to serve an individual hookup, Terry Ingalls, stating in an email from Jeff Deville that "we have water main adjacent to both of these properties and CHS is in the City limits." (Thompson Aff. at ¶ 28)

18. Sioux had the capacity to serve both Cenex Harvest States and Terry Ingalls with potable water. (Thompson Aff. at ¶ 29)

19. Sioux has a 6-inch pipeline that runs parallel to I-29 running north and south through Watertown. This line is located just east of the northbound lane of I-29. (Thompson Aff. at ¶ 33; Shriever Report pp. 2-4)

20. Watertown has annexed areas east of I-29 and Sioux's 6-inch line. Watertown has served several businesses in this area, including businesses known as Big Shot Fireworks, Cross Country Couriers, Dakota Automation, FedEx, Randy Hartley, Watertown Truck and Trailer, Lew's Fireworks, McFleeg Feeds, Rising Star, Jim Aesoph-Car Wash, Jim Aesoph, Wilco, and Wayne Wilberg. (Thompson Aff. at ¶ 33; Burian Expert Report p. 8)

21. The Jim Aesoph property is located approximately 300 feet from Sioux's 6-inch line. Watertown and Watertown Municipal Utilities never asked or received permission from Sioux to serve Aesoph, nor did it

pay Sioux. (Thompson Aff. at ¶ 34)

22. The Federal Express site is located approximately 200 feet from Sioux's 6-inch line. Watertown and Watertown Municipal Utilities never asked or received permission from Sioux to serve Federal Express, nor did it pay Sioux. (Thompson Aff. at ¶ 35)

23. The McFleeg Feeds lot is located approximately 200 feet from Sioux's 6-inch line. Watertown and Watertown Municipal Utilities never asked or received permission from Sioux to serve Federal Express, nor did it pay Sioux. (Thompson Aff. at ¶ 36)

24. Kittleson's Addition is a development on the north shore of Pelican Lake. Sioux has pipes in the ground in and near Kittleson's Addition and has 10 services installed in the Kittleson's Addition. 5 of the 10 services are active. (Thompson Aff. at ¶ 37)

25. Kittleson's Addition is within Watertown's "Future Use Map." Kittleson's Addition is circled on the map. (Cole Aff. ¶ 2)

26. In August 2014 four new potential customers were making inquiry of the possibility of hooking up to Sioux. Sioux asked Watertown what its position was on the four potential customers. On September 26, 2014 Jeff Deville sent an email to Sioux stating that "the City has been approached by the people along the stretch of lake [Kittleson's Addition]

asking to be annexed into the City. I am waiting to see the outcome of that is. I will let you know as soon as I can. (Thompson Aff. ¶ 38)

27. On October 21, 2014 Deville sent an email to Sioux stating that "we do not intend on hooking this lot to our water system. If the annexation happens it will take a considerable amount of time to get this completed and they should not have to wait for water. How this area will be served with water will have to be worked out during the annexation process." (Thompson Aff. ¶ 39)

28. Sioux took this email to mean that WMU wanted Sioux to provide water to the four potential water customers until such time Watertown annexed the sites and Watertown chose to serve them. (Thompson Aff. at ¶ 40)

29. Watertown has annexed a development known as "Kak's Addition" and WMU has provided water service to 20 homes in the Kak's Addition Development. (Thompson Aff. at ¶ 41)

30. Sioux has water pipes in the ground approximately 100 feet from the boundary of Kak's Addition. Watertown never paid Sioux for serving Kak's Addition, nor did it ask Sioux's permission to serve this area. (Thompson Aff. at ¶ 42)

31. There are 3 new homes being constructed in the Kak's Addition.

Watertown is claiming that it has the right to serve those 3 new homes with water service. Sioux's water lines are approximately 100 feet from the boundary of Kak's Addition and Sioux could provide water to those three houses within several weeks of a request for service.  (Thompson Aff. at ¶¶ 40-43)

      32.    Watertown and WMU have retained two expert witnesses, Steve Burian and Richard Wagner.  Burian and Wagner prepared a report on Sioux's water capacity.  In their report Burian and Wagner stated that of the 13 businesses identified on the east side of Watertown adjacent to Sioux's 6-inch line that Sioux's ability to serve is "adequate for all those users except two, Watertown Truck & Trailer and Rising Start."  (Burian and Wagner Expert Report p. 8)

      33.    Watertown's expert Burian testified that he does not know of any facts to suggest that Sioux hasn't been able to serve any of its current customers. (Burian depo. pp. 49-50)

      34.    Watertown's expert Burian testified that he is not aware of any decision by any governmental entity that how Sioux provides water is insufficient in any way under South Dakota law. (Burian depo p. 25)

      35.    Watertown's expert Burian testified that on the east side of Watertown if the City provided fire flow there is sufficient fire protection

for those east side customers. (Burian depo. p. 29)

36. Watertown's expert Burian testified that he doesn't know if the 2016 improvements Sioux made to the west side of its system near Pelican Lake allow Sioux to serve additional customers. (Burian depo. pp. 51, 55)

37. Watertown's expert Burian testified that on the east side of Watertown Sioux could serve domestic water to Big Shot Fireworks, Federal Express, and other customers with lower demand could be served by Sioux. (Burian depo. pp. 56-59).

38. Watertown's expert Wagner testified that it was his understanding that Sioux is not required to provide fire flow. (Wagner depo. p. 20).

39. Watertown's expert Wagner testified that with proper improvements Sioux could serve additional customers on the west side of its system near Pelican Lake. (Wagner depo. p. 19)

40. Watertown's expert Wagner testified that he has "no opinion" on Sioux's expert's opinion that with system improvements Sioux would be able to serve an additional 200 customers on the west side of Watertown. (Wagner depo. p. 25-26)

41. Sioux's consulting engineer, and expert witness is Darin Schriever of DGR Engineering. DGR has been Sioux's engineer for over 30

years.  Schriever has opined that based on water hydraulic modeling Sioux can serve 30 to 35 new customers in its system without making any major improvements to its water treatment and production facilities. (Schriever depo. p. 26; Schriever Expert Report p. 3)

42.	Sioux's consulting engineer Schriever opined that Sioux can easily accommodate additional customers on the east side of Watertown because of the existence of Sioux's 6-inch pipe along the east side of I-90. (Schriever Expert Report p. 3)

43.	Sioux completed a project on the west side of its system generally between Pelican Lake and Lake Kampeska to address minor pressure issues. That project was completed in the summer of 2016. (Schriever Expert Report p. 3; Thompson Affidavit ¶ 43)

44.	Schriever opined that with the improvements to the West Side distribution system Sioux could serve 30-35 new customers without any improvement in source capacity. Schriever also opined that with the improvements to the West Side distribution system that the distribution system could provide service to 192 new customers.

45.	Sioux could provide water to the Jim Aesoph property, Federal Express, and McFleeg Feeds within several weeks, or less, of a request for water.  (Thompson Aff. at ¶ 45)

46. Watertown has executed several "Water Service and Voluntary Annexation Agreements" prepared by its City Attorney. These agreements allow entities outside the Watertown municipal boundaries to connect to Watertown Municipal Utilities for water service. In exchange for the right to connect to WMU's water service, the petitioner must agree to petition to annex into the City of Watertown. These agreements also have a "hold harmless" provision in them, stating that "owner agrees to indemnify and hold MU harmless from claims arising from the installation, use, maintenance or repair of water service over and above the above-described real property." (Cole Aff. at ¶ 3)

47. Sioux's expert economist, Rick Westbrook, has opined that Sioux has sustained an annual loss of profits of $15,588.17 by not being able to serve the 35 disputed customers. The loss was calculated based on activity for 2013, 2014 & 2015. (Westbrook Depo, p. 7; depo Exhibit 5 pp. 7, 11)

48. Westbrook has opined that Sioux Will suffer a loss of profits as long as Sioux does not serve the 192 disputed customers, and will lead to an annual loss of $$64,825.52 from 2017 through 2036. (Westbrook Depo, p. 7; depo Exhibit 5 pp. 7, 11)

49. Westbrook has opined Sioux will have an annual loss of

$74,377.87 from 2037 through 2049. (Westbrook Depo, p. 7; depo Exhibit 5 pp. 7, 11)

50. Sioux would have and will in the future construct necessary facilities to serve customers entitled to receive water from Sioux. (Thompson Aff. at ¶ 2)

51. Sioux was never given the opportunity to provide water service to the 192 customers identified in Exhibit E of Darin Schriever's Report. Watertown and WMU simply took the customers. (Thompson Aff. at ¶ 3)

Dated this 5th day of December, 2016.

                                                */s/ Jeff Cole*
                                                Jeff Cole
                                                William D. Sims
                                                ZIMMER, DUNCAN AND COLE, L.L.P.
                                                5000 S. Broadband Lane, Suite 119
                                                Sioux Falls, SD 57108
                                                (605) 361-9840
                                                jcole@zdclaw.com
                                                bill@zdclaw.com
                                                *Attorneys for Plaintiff*
                                                *Sioux Rural Water System*