```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH DAKOTA
                     NORTHERN DIVISION
```

| | | |
|---|---|---|
| SIOUX RURAL WATER SYSTEM, INC., a Non-Profit Corporation | | Civ. 15-1023 |
| Plaintiff, | | |
| -vs- | | **DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| CITY OF WATERTOWN, a South Dakota Municipality, and WATERTOWN MUNICIPAL UTILITIES, an agency of the CITY OF WATERTOWN, | | |
| Defendants. | | |

Pursuant to D.S.D. LR 56.1(B), defendants respond to Plaintiff's Statement of Undisputed Material Facts as follows:[1]

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

---

[1] The same citation conventions used in defendants' other filings will be used in this Response, except that items already part of the record will be referred to by their document number. In addition to the facts set forth herein, defendants incorporate Defendants' Statement of Undisputed Material Facts (Doc. 30) by this reference.

1

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. This paragraph is disputed because it is incomplete.  While Sioux has added new water customers within three miles of Watertown, it has conventionally followed state law in doing so. Sioux's practice recognized the three mile area around Watertown city limits as being territory where the City has a right of first refusal.  (Doc. 34-1, Thompson 107-108; Doc. 34-7, Sioux 141-142.)

18. This paragraph is disputed.  Defendants acknowledge that Sioux is serving the 464 water users it has added.  However, the statement that "[w]ithout any changes to Sioux's water production facilities Sioux has sufficient pipes in the ground and actual capacity to serve 30-35 additional users system-wide and in the area within the three-mile area around the City of Watertown" is misleading and disputed.

> The majority of the new customers Sioux seeks to add are located on the west side of Watertown. Sioux is operating at or near full capacity under peak demand conditions in that west side area. (Doc. 34-5, Schriever 64-65.) If Sioux added customers on the west side, Sioux would not be able to meet the needs of the new customers and/or some of the existing customers until improvements are made. (Id., Schriever 47, 54.) Also, Schriever testified that he would not recommend adding customers on the west side. (Id., Schriever 47.) Plant improvements on the source capacity side are not under contract at this time. (Id., Schriever 83.)

19. This paragraph is undisputed, but incomplete for the reasons discussed in paragraph 18, which is incorporated.

20. This paragraph is disputed as being incomplete. The referenced improvements will add distribution capacity, but not source capacity to the west side. (Doc. 34-5, Schriever 57-58.) Both source and distribution capacity is necessary to serve a customer. (Id, Schriever 80.) Plant improvements on the source capacity side are not under contract at this time. (Id., Schriever 83.) Schriever testified that he would not recommend adding customers on the west side. (Id., Schriever 47.)

21. Undisputed.
22. This paragraph is disputed, for two reasons.  First, the cited testimony does not support the statement.  Both Lehner and Deville testified that they follow state law as to annexed customers who request MU's service; they did not state that MU has "historically claimed the right to serve any area the City annexes with water," and that is not an accurate summary of their testimony.  Second, the statement is refuted by other testimony.  MU's policy is that, when the City annexes property, it would not require a Sioux customer within the city limits to become an MU customer. (Doc. 34-2, Deville 13-14.)  If an annexed customer requests that they go from Sioux to MU, MU follows state law by buying out the infrastructure related to that customer and paying the percentage of profit required by state law. (Id., Deville 14.)
23. This paragraph is disputed as being incomplete.  Sioux has also demonstrated its belief that the City has a right of first refusal to serve the customers in the three mile area around the Watertown city limits.  (Doc. 34-1, Thompson 107-108; Doc. 34-7, Sioux 141-142.)
24. This paragraph is disputed.  The cited testimony does not support the statement.  Neither page 38 of Steve Lehner's deposition transcript nor page 21 of Jeff DeVille's transcript say anything like what is represented here.

4

25. This paragraph is disputed. First, what is recited in ¶25 is not the City or MU's policy; it is the state law that operates to define Sioux's boundaries. See SDCL 9-47-22. Second, prior to this lawsuit, Sioux also believed that Watertown had a right of first refusal to serve the customers in the three mile area around the Watertown city limits. (Doc. 34-1, Thompson 107-108; Doc. 34-7, Sioux 141-142.)

26. This paragraph is disputed for two reasons. First, ¶21 of Thompson's affidavit discusses annexed property on the west side of Sioux's system adjacent to Watertown, including Kak's Addition. Sioux clearly lacks the capacity to serve these customers. Sioux does not currently have adequate facilities in place to serve the potential new west side customers, as both distribution and source improvements would be needed. (Doc. 34-5, Schriever 28, 57.) If Sioux added customers on the west side, Sioux would not be able to meet the needs of the new customers and/or some of the existing customers until improvements are made. (Id., Schriever 47, 54.) Second, the facts in this paragraph are immaterial. As Sioux has no defined territory, other than the boundaries created by SDCL 9-47-22, neither the City nor MU owes a legal duty to give Sioux the opportunity to provide water service in the annexed areas.

5

27. Defendants object to this paragraph, as it states a legal conclusion rather than a statement of fact. Additionally, Sioux has no defined "service territory." (Doc. 34-1, Thompson 11-12; 94; 102.) The applicable boundaries are, therefore, fixed by state law. See SDCL 9-47-22. Finally, ¶23 of Thompson's Affidavit does not support the statement.

28. This paragraph is disputed as incomplete. Without making capital improvements, Sioux could continue to serve their current customer base at their current demands, and it would have sufficient cash flow to pay its bills and operate. (Doc. 34-5, Schriever 84-85.) Additionally, ¶24 of Thompson's Affidavit does not support the statement.

29. This paragraph is undisputed, but ¶25 of Thompson's Affidavit does not support the statement.

30. This paragraph is disputed. Sioux requires prospective customers to pay the cost to hook up with the Sioux line, and such costs have not be considered in its analysis of its ability to serve new customers. (Doc. 34-1, Thompson 84-85.)

31. This paragraph is disputed for several reasons. First, the customers listed in ¶26 of Thompson's Affidavit are businesses on the east side of Watertown, and Sioux has made no showing that it can meet their customer-specific needs. Sioux's Articles of Incorporation limit their

6

purpose to the supply of "domestic" water. (Doc. 34-7, Sioux 429-434.) Sioux does not have any data about the actual usage of the east side entities. (Doc. 34-5, Schriever 23.) Sioux has only considered domestic water supply for consumption or other related uses. (Id., Schriever 25-26.)

Second, Lew's Fireworks wanted to be annexed into the City of Watertown in order to receive water service from the City in order to sustain its fire protection needs. (Doc. 34-1, Thompson 62-63.) Sioux does not provide fire protection. (Id., Thompson 63.) Sioux invoiced the City, and the City paid Sioux for amounts associated with the infrastructure Sioux had invested into Lew's as well as a figure for income Sioux would have received on the Lew's account. (Id., Thompson 60-62; Doc. 34-7, Sioux 122-127.)

Third, when Titan Machinery was putting up its new building, Sioux conceded that it made "no claim for the water service to the new Titan building." (Doc. 34-4, Mack 36; Doc. 34-1, Thompson 70-72; Doc. 34-7, Sioux 546.) Sioux does not have sufficient capacity to supply Titan with its water needs. (Doc. 34-1, Thompson 72.)

Finally, the facts in this paragraph are immaterial. Because Sioux has no defined territory, other than that created by SDCL 9-47-22, neither the City nor MU owes a legal duty to give Sioux the opportunity to provide water service in the annexed areas.

32. This paragraph is disputed insofar as it states that "WMU typically takes any new customers in the annexed area." The way this paragraph is worded is misleading. In fact, the cited testimony from Jeff DeVille reads as follows:

> Q. And if there was Sioux customers there, you would apply the process that you've already testified to, correct?
>
> A. I would apply what I said that we would <u>not</u> ask to have that person hooked to us.
>
> Q. But if the person asked to be hooked to you, then you would hook them up?
>
> A. Yes.

(Emphasis added.) MU's policy is that, when the City annexes property, it would <u>not</u> require a Sioux customer within the city limits to become an MU customer. (Doc. 34-2, Deville 13-14.) If an annexed customer requests that they go from Sioux to MU, MU follows state law by buying out the infrastructure related to that customer and paying the percentage of profit required by state law. (<u>Id.</u>, Deville 14.)

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. The facts in this paragraph are immaterial.  Because Sioux has no defined territory, other than that created by SDCL 9-47-22, neither the City nor MU owes a legal duty to give Sioux the opportunity to provide water service in the annexed areas.

37. The facts in this paragraph are immaterial.  Because Sioux has no defined territory, other than that created by SDCL 9-47-22, neither the City nor MU owes a legal duty to give Sioux the opportunity to provide water service in the annexed areas.

38. The facts in this paragraph are immaterial. When Titan Machinery was putting up its new building, Sioux conceded that it made "no claim for the water service to the new Titan building."  ((Doc. 34-4, Mack 36; Doc. 34-1, Thompson 70-72; Doc. 34-7, Sioux 546.)  Sioux does not have sufficient capacity to supply Titan with its water needs. (Doc. 34-1, Thompson 72.)  Moreover, because Sioux has no defined territory, other than that created by SDCL 9-47-22, neither the City nor MU owes a legal duty to give Sioux the opportunity to provide water service in the annexed areas.

39. Defendants' response to ¶38 is incorporated.

40. Undisputed.

41. This paragraph is undisputed, but incomplete. The customers listed in ¶33 of Thompson's Affidavit are businesses on the east side of Watertown, and Sioux has made no showing that it can meet their customer-specific needs. Sioux's Articles of Incorporation limit their purpose to the supply of "domestic" water. (Doc. 34-7, Sioux 429-434.) Sioux does not have any data about the actual usage of the east side entities. (Doc. 34-5, Schriever 23.) Sioux has only considered domestic water supply for consumption or other related uses. (Id., Schriever 25-26.)

42. This paragraph is undisputed, but incomplete, for the reasons discussed in the response to ¶41, which is incorporated. Additionally, defendants were not obligated to ask or receive permission to serve Aesoph, because he is not within a defined "service territory" under Sioux's control. (Doc. 34-1, Thompson 11-12; 94; 102.)

43. This paragraph is undisputed, but incomplete, for the reasons discussed in the response to ¶41, which is incorporated. Additionally, defendants were not obligated to ask or receive permission to serve Federal Express, because it is not within a defined "service territory" under Sioux's control. (Doc. 34-1, Thompson 11-12; 94; 102.)

44. This paragraph is undisputed, but incomplete, for the reasons discussed in the response to ¶41, which is incorporated. Additionally, defendants were not obligated to ask or receive permission to serve McFleeg Feeds (or Federal Express, which is referenced in the second sentence of ¶44), because it is not within a defined "service territory" under Sioux's control. (Doc. 34-1, Thompson 11-12; 94; 102.)
45. This paragraph is immaterial. MU does not currently supply water to anyone within Kittleson's addition. (Doc. 34-1, Thompson 74.)
46. Defendants' response to ¶45 is incorporated.
47. Defendants' response to ¶45 is incorporated.
48. Defendants object to ¶48. This is not a statement of fact; rather, it is a statement of Thompson's opinion.
49. Undisputed.
50. This paragraph is disputed for two reasons. First, Sioux clearly lacks the capacity to serve the customers within Kak's Addition and other customers on the west side of its system. Kak's Addition is listed as one of the customers analyzed by Sioux's expert. (Doc. 34-6, pg. 3.) Mr. Schriever testified that Sioux does not currently have adequate facilities in place to serve the potential new west side customers, as both distribution and source improvements

11

would be needed.  (Doc. 34-5, Schriever 28, 57.)  If Sioux added customers on the west side, Sioux would not be able to meet the needs of the new customers and/or some of the existing customers until improvements are made.  (Id., Schriever 47, 54.)  Second, the facts in this paragraph are immaterial.  Because Sioux has no defined territory, other than that created by SDCL 9-47-22, neither the City nor MU owes a legal duty to give Sioux the opportunity to provide water service in the annexed areas like Kak's Addition.

51. Defendants' response to ¶50 is incorporated.
52. This paragraph is disputed insofar as it states "Sioux's ability to serve is 'adequate for all those users except two, Watertown Truck & Trailer and Rising Start."  Sioux conspicuously omits the very next sentence of the Burian and Wagner Report, which states: "Recognizing that some of these users consist of unique businesses that have irregular water demand from one month to the next, however, further investigation into their water usage is necessary."  (Doc. 33-6, pg. 2.)  The customers on the east side of Watertown are businesses, and Sioux has made no showing that it can meet their customer-specific needs.  Sioux's Articles of Incorporation limit their purpose to the supply of "domestic" water.  (Doc. 34-7, Sioux 429-434.)  Sioux's expert concedes it does not have any data about the actual

12

usage of the east side entities. (Doc. 34-5, Schriever 23.) Sioux has only considered domestic water supply for consumption or other related uses. (Id., Schriever 25-26.)

53. It is undisputed that Burian testified as stated. However, what Burian does not know is not a material fact.

54. It is undisputed that Burian testified as stated. However, what Burian does not know is not a material fact.

55. It is undisputed that Burian testified as stated; however, the testimony regarding Watertown's provision of fire protection does not appear on page 29 of Burian's deposition.

56. It is undisputed that Burian testified as stated. However, what Burian does not know is not a material fact. Sioux's expert, on the other hand, confirmed Sioux's inability to serve additional customers on the west side of Watertown. (Doc. 34-5, Schreiver 28, 47, 54, 57.)

57. This paragraph is disputed, and defendants' response to ¶52 is incorporated.

58. Defendants object to this paragraph, as it goes to a legal conclusion rather than a statement of fact.

59. This paragraph is disputed. Wagner was asked vague questions about nondescript improvements. Sioux's expert was asked specific questions about the need for source capacity improvements to serve more customers on the west

side of Sioux's system. Schriever testified that Sioux does not currently have adequate facilities in place to serve the potential new west side customers, as both distribution and source improvements would be needed. (Doc. 34-5, Schriever 28, 57.) If Sioux added customers on the west side, Sioux would not be able to meet the needs of the new customers and/or some of the existing customers until improvements are made. (Id., Schriever 47, 54.) He confirmed that the referenced improvements will add distribution capacity, but not source capacity to the west side. (Id., Schriever 57-58.) Both source and distribution capacity is necessary to serve a customer. (Id., Schriever 80.) Plant improvements on the source capacity side are not under contract at this time. (Id., Schriever 83.)

60. Defendants' response to ¶59 is incorporated.

61. This paragraph is disputed. While Schriever initially testified as stated, he later qualified his answer as follows:

> Q   And I think you said that your analysis that was done, which resulted in this report, indicated that considering current distribution, source capacity, storage, and all the other factors, Sioux Rural Water could add 30 to 35 new customers without making any improvements to their system, correct?
>
> A   Correct, **but I need to qualify that by saying that that assumes that the current construction project is in place.**

(Doc. 34-5, Schriever 46.) (Emphasis added.)  Also, Schriever testified that he would not recommend adding customers on the west side.  (Id., Schriever 47.)

62. This paragraph is disputed, and defendants' response to ¶52 is incorporated.

63. This paragraph is undisputed but incomplete.  The referenced improvements will add distribution capacity, but not source capacity to the west side.  (Doc. 34-5, Schriever 57-58.) Both source and distribution capacity is necessary to serve a customer.  (Id., Schriever 80.)  Plant improvements on the source capacity side are not under contract at this time. (Id., Schriever 83.)

64. Undisputed.

65. This paragraph is both disputed and immaterial.  First, it is disputed because Sioux has not made a customer-specific inquiry into its ability to serve the businesses listed. Sioux's expert concedes it does not have any data about the actual usage of the east side entities.  (Doc. 34-5, Schriever 23.)  Sioux has only considered domestic water supply for consumption or other related uses.  (Id., Schriever 25-26.)  Second, it is immaterial, because defendants were not obligated to ask or receive permission to serve the Jim Aesoph property, McFleeg Feeds, or Federal Express, because those customers are not within a defined

15

"service territory" under Sioux's control. (Doc. 34-1, Thompson 11-12; 94; 102.)

Dated this 5th day of December, 2016.

                RICHARDSON, WYLY, WISE, SAUCK
                  & HIEB, LLP


              By   /s/ Zachary W. Peterson
                  Attorneys for Defendants

              One Court Street
              Post Office Box 1030
              Aberdeen, SD  57402-1030
              Telephone No. 605-225-6310
              Facsimile No. 605-225-2743
              e-mail: zpeterson@rwwsh.com

**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for defendants, hereby certifies that on the 5th day of December, 2016, a true and correct copy of **DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS** was served electronically through the CM/ECF Federal Court filing system on:

(jcole@zdclaw.com)
Mr. Jeffrey A. Cole
Zimmer, Duncan & Cole, LLP
Attorneys at Law
5000 South Broadband Lane, #119
Sioux Falls, SD  57108


                /s/ Zachary W. Peterson