UNTIED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| SIOUX RURAL WATER SYSTEM, INC., a Non-Profit Corporation<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF WATERTOWN, a South Dakota Municipality, and WATERTOWN MUNICIPAL UTILITIES, an agency of the CITY OF WATERTOWN<br><br>Defendants. | Civ. 15-1023<br><br><br>**PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# INTRODUCTION

Sioux and the Defendants have both filed motions for summary judgment and the facts and law have been extensively discussed by both parties. Therefore, Sioux will attempt not to simply regurgitate arguments from the previous briefs that have been filed.

Defendants do not dispute that Sioux is a federally indebted association as defined in § 1926(b) and has been indebted to the United States since 1974.[1] Defendants do not dispute that Sioux is actually providing service to its

---

[1] Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ¶¶ 1-3

464 current customers within three miles of Watertown.[2] Defendants argue that Sioux is serving its current customers illegally, and that Sioux lacks the capacity to serve the six customers that are the subject of its Motion for Partial Summary Judgment.

## I.   Sioux has had the legal right to serve its 464 current customers within three miles of Watertown under state law since 1974.

Sioux has discussed this issue in both its initial Brief in support of its Motion and in its response to the Defendants Motion. Sioux incorporates those arguments by reference and will not repeat those arguments here.[3]

However, Defendants make several arguments in an attempt to avoid running afoul of preemption by § 1926(b) that require a response. Chief among the arguments is a claim that "In order for Sioux to prevail, the Court must conclude that Sioux has a limitless service territory." The Court, of course, must conclude no such thing.[4]

It's important to note that Defendants don't simply claim that it is illegal for Sioux to serve any of its 464 customers within three miles of Watertown. By implication Defendants also claim that each time Watertown

---

[2] Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ¶ 16

[3] Sioux has argued that SDCL 9-47-22 and 23 do not apply to federally indebted rural water associations at all, and don't prohibit Sioux from serving those customers or area. See pages 3-5 of Sioux's Reply Brief to Defendants' Motion. Sioux incorporates by reference those arguments.

[4] Sioux does not claim it has a limitless service territory. Simply claiming the right to serve its 464 current customers does not equate to asking this Court for a limitless service territory.

annexes property that three-mile "illegal" zone expands. The result of this is that Sioux customers within the three-mile zone—served legally by Sioux for years under South Dakota law even under Defendants' theory—suddenly become illegal for Sioux to serve.

Defendants' argument is that the two state statutes, SDCL 9-47-22 and 23, enacted 15 years *after* Sioux first became indebted to the United States, take away Sioux's right to serve its 464 customers and territory within three miles of Watertown. Its interesting that Defendants repeatedly cite to <u>Rural Water System #1 v. City of Sioux Center</u>, 967 F.Supp. 1483 (N.D. Iowa 1997), but continue to ignore the key holding of the case:

> Therefore, there is express and conflict preemption of any state law that purports to take away from an indebted association *any territory* in which the association has both a legal and physical ability to provide service *at the time the association is first entitled to invoke the protection of § 1926(b).*

<u>Rural Water System #1</u>, 967 F. Supp. at 1529 (emphasis added).

Defendants *don't* claim that it was illegal for Sioux to serve customers and territory within three miles of Watertown under South Dakota law *before* those statutes were enacted in 1989. And Defendants *don't* dispute the fact that Sioux has been continuously indebted to the United States since 1974.

These facts are fatal to Defendants' preemption argument. Once

3

Sioux had the state law right to serve the customers and the territory, and once it obtained federal funding, § 1926(b) preempts any attempt by a state law to limit or curtail the service territory.

> II. **Sioux has the capacity to serve the three new customers in KAK Addition on the West Side and the three businesses on the East Side.**

**KAK Addition**

Defendants' arguments on the three KAK Addition customers are based on claimed physical limitations to Sioux's ability to serve. It's true that Sioux's engineer testified that adding West Side customers was limited *until* the scheduled distribution improvements were completed. Those distribution improvements have been completed. In fact, with the distribution improvements Sioux can serve an additional 192 customers on the West Side.

Admittedly, distribution capacity without source capacity may not mean much. But here, it's undisputed that Sioux *has* source capacity to add 30-35 customers without improving source capacity at all. The distribution system does not limit service to the three customers after the improvements were made. Serving the three customers in KAK Addition is well within the capacity of Sioux, and its telling that Defendants don't even discuss the capacity issue after the improvements were made.

4

**The Three East Side Businesses**

The Defendants' own expert admits that Sioux has the capacity to serve Federal Express, McFleeg Feeds, and the Jim Aesoph properties. This admission was made in the Expert's report. Defendants are bound by that admission.

### III. Sioux is not required to provide water for fire protection in order to have § 1926(b) protection.

Defendants essentially concede that § 1926(b) does not require Sioux to provide fire protection in order to have § 1926(b) protection. Although Defendants correctly note that the Eighth Circuit has not ruled on the issue, several federal circuits have. The <u>Rural Water System</u> district court also ruled on the issue in one of its decisions, and noted the issue was a "red herring." <u>Rural Water System # 1 v. City of Sioux Center</u>, 29 F. Supp.2d 975, 993 (N.D. Iowa 1998).

Defendants complain that if Defendants provide fire protection and Sioux provides domestic water it is unfair because it would involve a customer having two water providers, one for domestic water and one for fire protection.[5] But Defendants cite no case law on their claim that running dual systems, one for fire protection, and one for domestic water, is contrary to the purpose of § 1926(b). In fact, the unpublished decision cited by Defendants

---

[5] Sioux has no objection to the Defendants providing fire protection to Sioux's customers. This is a separate issue from the provision of domestic water.

5

on page 24 of their Brief in Opposition, <u>Water Works Dist. No. 11 of Tangipahoa Parish v. City of Hammond</u>, 1989 WL 117849 (E.D. La. 1989)(unpublished) actually recognizes the necessity of having dual systems when § 1926(b) provides protection to the rural water association.

The Tenth Circuit recognized that dual systems—one for domestic water and one for fire protection—by two different providers was permissible under § 1926(b). <u>Rural Water Dist. No. 1 v. City of Wilson, Kan.</u>, 243 F.3d 1263, 1272 (10th Cir. 2001). The Tenth Circuit held that a city providing fire protection, as opposed to domestic water, to customers and territory protected by § 1926(b) did not violate the statute.

More recently, an Oklahoma District Court dealing with the issue noted that:

> Precedent cases, however, are clear that the § 1926(b) anti-curtailment provision relates only to the supply of household water. A water association, such as Wagner-5, may be protected from competition regardless of its ability to provide fire services. Moreover, the Oklahoma Supreme Court has determined that 'the right of an indebted association to provide water service within its service area under section 1926(b) coexists with a municipality's right to provide fire protection.

<u>District No. 5 v. City of Coweta</u>, ____ F.Supp.2d____ (N.D. Okla. 2016), 2016 WL 4289915 pp. 15-16 (citations omitted).

Finally, the Eighth Circuit has held that the preference of the potential recipient of the water service is not a consideration under § 1926(b). <u>Public</u>

6

Water Supply Dist. v. City of Lebanon, Mo., 605 F.2d 511, 522 (8th Cir. 2010). The Eight Circuit noted that allowing a recipient's preferences to restrict the methods a rural district can provide service would "significantly dilute § 1926(b)'s protection." Id. at 522. The Court noted that "we recognize that § 1926(b) can impose burdens on recipients, since granting rural districts an exclusive right to serve certain recipients also prevents recipients from choosing other service providers. This, however, is the choice Congress made in enacting the statute, and it is not the role of the courts to upset such policy decisions." Id. (citation omitted).

**IV.   Equitable defenses are not allowed in § 1926 (b) cases.**

Defendants do not dispute the case law cited in Sioux's initial Brief on this issue. Defendants complain about certain claimed "agreements" in their Brief but none of those agreements were approved by the United States.

7 CFR § 1942.17(n)(2)(xii) requires the government's approval before a facility can be sold or leased. The Eighth Circuit noted when a customer is "traded" it is not the equivalent to selling a "facility" under the regulation. Rural Water System # 1 v. City of Sioux Center, 202 F.3d 1035, 1038 (8th Cir. 2000). The Court went on to hold that an exchange of equal value—a customer for customer trade—did not require government approval. However, it left open the question of whether an unequal exchange—or a

taking without any compensation would require government approval.

Because the government was never part of the so-called "agreements" the Defendants discuss, most that involved no compensation paid to Sioux, any such "agreement" has no legal effect. The purposes of § 1926(b) are clearly not met when the government's security is impaired.

Respectfully submitted this 15th day of December, 2016.

                                              */s/ Jeff Cole*
Jeff Cole
William D. Sims
ZIMMER, DUNCAN AND COLE, L.L.P.
5000 S. Broadband Lane, Suite 119
Sioux Falls, SD 57108
(605) 361-9840
E-mail: jcole@zdclaw.com
*Attorneys for Plaintiff*