```
              UNITED STATES DISTRICT COURT
                DISTRICT OF SOUTH DAKOTA
                    NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
SIOUX RURAL WATER SYSTEM, INC.,  *        Civ. 15-1023
a Non-Profit Corporation         *
                                 *
              Plaintiff,          *
                                 *
    -vs-                         *    DEFENDANTS' REPLY BRIEF
                                 *    IN SUPPORT OF MOTION FOR
CITY OF WATERTOWN, a South Dakota *    SUMMARY JUDGMENT
Municipality, and WATERTOWN      *
MUNICIPAL UTILITIES, an agency of *
the CITY OF WATERTOWN,           *
                                 *
              Defendants.         *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

The defendants, City of Watertown ("City") and Watertown Municipal Utilities ("MU"), respectfully submit this reply brief in support of their Motion for Summary Judgment (Doc. 28.) Defendants are entitled to judgment as a matter of law, because Sioux Rural Water System, Inc. ("Sioux"), is not entitled to the protection of 7 U.S.C. §1926(b) on its claims in this lawsuit.

### REPLY TO PLAINTIFF'S ARGUMENT

**A. Sioux minimizes its attempt to use 7 U.S.C. §1926(b) as a sword.**

In Sioux's responsive brief, it attempts to retreat from the bold proclamations of its general manager, Heath Thompson, in order to appear more reasonable. Sioux attempts to persuade the Court that this lawsuit is about protecting its

1

right to serve current and future customers within three miles of the Watertown City limits where it has previously invested in infrastructure; and recovering damages for customers defendants have supposedly taken over.

Sioux is looking for much more than it lets on. Sioux prays for the following relief in its Complaint:

> 2. For an injunction against the Defendants, restraining them from taking existing or future customers and further *restraining the Defendants from selling water within the System's service territory*, and permanently enjoining the Defendants from encroaching upon, interfering with, and/or curtailing the rights incident to the System's exclusive federal franchise.

(Doc. 1, pg. 9.) (Emphasis added.)

Additionally, in terms of damages, Sioux's claim is not limited to customers it previously served that were taken over by defendants. Rather, Sioux has disclosed a certified public accountant's opinion that it will suffer $64,825.52 in annual lost profits from 2017 to 2036, and $74,377.87 from 2037 to 2049. These figures are based on the claimed loss of 192 customers in Sioux's self-defined, nebulous service territory that Sioux never previously served, and likely still cannot serve.[1]

---

[1] Defendants have previously briefed the "pipes in the ground" analysis and discussed, at length, the deficiencies in Sioux's system which prevent it from making service available, within the meaning of §1926(b). (Doc. 29, pgs. 17-21; Doc. 42, pgs. 15-20.) No further discussion will be devoted to this issue in this brief.

Sioux's problem continues to be that it has *no defined service territory.* In fact, Sioux has admitted all of the pertinent facts relating to its lack of any defined territory. (See Doc. 30, ¶¶5-8; Doc. 39, ¶¶ 5-8.) Sioux wants the Court to enjoin the defendants from selling water within a service territory that Sioux, itself, redefines every time it elects to serve a new customer or put a new line in the ground. (Doc. 30, ¶¶7-8; Doc. 39, ¶¶7-8.) Sioux also wants over a million dollars in damages for defendants' provision of water service to customers that fall within Sioux's self-defined, nebulous service territory.

Sioux's position is that Sioux gets to decide the scope of its federal protection, not state law. This puts Sioux on the same footing as the plaintiff in Le-Ax Water District v. City of Athens, 346 F.3d 701 (6th Cir. 2003). "When questioned by the panel at oral argument, Le-Ax did not dispute that, under its view of § 1926(b), it was entitled by federal law to the exclusive right to provide service to any unincorporated area that it could physically serve." Id. at 709. "Were we to uphold Le-Ax's claim in this case, we would be holding that this federal law, originally meant to protect water associations from undue intrusion, somehow gives them this sort of roving monopoly status." Id.

Section 1926(b) was enacted to *protect* entities like Sioux, not to give it a fiefdom over all water users it wants to serve. Sioux is not merely asking for protection. It is asking for the Court to countenance its unlimited expansion by enjoining defendants from serving anyone that Sioux may want to serve. It is asking for damages relating to defendants serving anyone that Sioux conceivably could have served. This is readily apparent from Sioux's prayer for relief, the testimony of its general manager, and the opinions of its accountant. Sioux's suggestion that this lawsuit is not being used offensively, in order to capitalize on new areas and customers, is where the detachment from reality truly comes in.

**B. Sioux has not shown a legal right to serve the disputed area.**

Sioux continues to conflate its provision of service with a legal right to serve. There is a difference between the legal right to serve an area under state law, and Sioux's actual provision of service in the disputed area. The latter does not satisfy the former. Sioux lacks a basis under South Dakota law to claim a legal right to serve within the three miles surrounding Watertown.

"[W]here state law prohibits an association from providing service in a disputed area, the association cannot rely upon its actual provision of service, or physical ability to provide service, as trumping its lack of legal authority to

4

provide service, absent a showing of estoppel or some other impediment to the assertion of the state-law prohibition." <u>Sioux Center</u> at 1526. As the Northern District of Iowa described, simply being able to provide the service does not get Sioux the protection of §1926(b):

> This court holds that the physical ability to serve an area is not sufficient to satisfy the statutory requirement that the association have "made service available" where there is a legal impediment to providing such service. Similarly, the court holds that providing actual service does not extend the protections of § 1926(b) to an indebted association's service of disputed territory in which the association has no legal right to provide service.

<u>Sioux Center</u> at 1527-28.

  Contrary to Sioux's assertion, neither §1926(b) nor any other federal law defines or creates a service area. Rather, §1926(b) merely preserves what territorial rights a rural water system has under state law. See <u>Rural Water Sys. # 1 v. City of Sioux Ctr.</u>, 967 F. Supp. 1483, 1527 (N.D. Iowa 1997) ("[C]ourts have routinely looked to state law as defining an association's protected service area under §1926(b)."); <u>B-Y Water Dist. v. City of Yankton</u>, 2008 U.S. Dist. LEXIS 100373, at *4 (D.S.D. Dec. 10, 2008) (the scope of the protection [§1926(b)] provides indebted water associations is murky because neither the "service provided or made available" nor the "area served" by the water association are defined in the federal statute or regulations).

5

Under South Dakota law, defendants have the right of first refusal to serve the customers within three miles of Watertown:

> If a rural water system is requested after July 1, 1989, to provide water service to any person who resides within three miles of a municipality owning and operating a water supply system, the rural water system shall promptly notify such municipality of such request in writing. Within sixty days from the receipt of such notice, the municipality may elect to provide water service to such person. If the municipality does not so elect, the rural water system may provide such service.

The three mile boundary established by SDCL 9-47-22 is the only definition of Sioux's boundaries which is provided by state law. Sioux argues that SDCL 9-47-22 and 23 are not intended to apply to it, because it is federally indebted and the South Dakota Legislature is presumed to know the implications of Federal Law. This argument fails, for two reasons. First, nowhere in the text of SDCL 9-47-22 or 23 is there anything remotely resembling an exemption for federally indebted entities. Second, Sioux's argument is belied by its own historic course of conduct. Sioux admits that it has historically recognized the three mile area around the Watertown city limits as being territory where the City has a right of first refusal. (Doc. 30, ¶20; Doc. 39, ¶20.) In other words, until it filed this suit, even Sioux recognized and followed state law.

Sioux argues that SDCL 9-47-22 is an enabling statute, and does not make it illegal for rural water systems to serve

customers within the three-mile area. But SDCL 9-47-22 very clearly conditions Sioux's provision of water service on a municipality first electing <u>not</u> to provide the water service. Without permission, there is absolutely no right to serve that area. Sioux does not have a legal right to serve without first getting permission. Indeed, permission could lawfully be withheld by a municipality in each and every case.

The South Dakota Legislature carved out the three mile area and determined that it should be treated differently. It has drawn a clear boundary line between: areas outside the three-mile zone where Sioux has an unfettered right to provide rural water service (which is protected by §1926(b)); and areas within the three-mile zone, where Sioux has the mere potential to provide service, but no legal right to do so (which is not protected by §1926(b)).

While Sioux serves customers within three miles of Watertown, it has no explicit legal right or obligation to serve that territory under South Dakota law.[2] This distinction is critical. Sioux argues that "no §1926(b) case Defendants cite,

---

[2] Sioux makes much of the fact that SDCL 9-47-22 was enacted in 1989, but Sioux served customers within the three mile area since 1974. But there is no delineation in Sioux's responsive materials between customers Sioux began serving prior to 1989 and customers it began serving after 1989. If this is a distinction that makes a difference, which defendants do not concede, Sioux's responsive materials do not clearly show which of its customers are "sacrosanct" under this analysis and which are not.

7

or that Sioux has been able to locate, hold that the filing of a map determines a service territory. . . ." (Doc. 38, pg. 9.) This is incorrect. Judge Piersol found B-Y's territorial map to be critical to his analysis. "B-Y's Petition for Organization included the three-mile area surrounding Yankton, the Petition was approved by the appropriate state regulatory agency, and B-Y has served customers in that area for years." Id. at *7-*8. "South Dakota law clearly gives water districts such as B-Y the right to provide water services, see SDCL 46A-9-39 through SDCL 46A-9-45, and B-Y provides those services within its geographical boundaries." Id. at *8 (emphasis added).

Sioux is on an entirely different footing than B-Y Water District, which had a state-approved territory and the state's blessing to serve the customers in the disputed areas around Yankton. Because Sioux has no legal right to provide service to customers within three miles of Watertown, the protections of §1926(b) do not apply.[3]

## CONCLUSION

For all the reasons discussed in this brief and the other briefs defendants filed (Docs. 29 and 42), Sioux lacks a legal right to serve the disputed area. It cannot prevail on its various claims for relief, which are targeted at expanding its

---

[3] Defendants have already responded to Sioux's preemption argument, and that discussion is incorporated. (See Doc. 42, pgs. 8-11.)

8

undefined service territory, rather than protecting its current status. Defendants respectfully urge the Court to grant their motion for summary judgment.

        Respectfully submitted this 15th day of December, 2016.

        RICHARDSON, WYLY, WISE, SAUCK
        &amp; HIEB, LLP


By   /s/ Zachary W. Peterson
     Attorneys for Defendants

One Court Street
Post Office Box 1030
Aberdeen, SD 57402-1030
Telephone No. 605-225-6310
Facsimile No. 605-225-2743
e-mail: zpeterson@rwwsh.com

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for defendants, hereby certifies that on the 15th day of December, 2016, a true and correct copy of **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served electronically through the District Court CM/ECF filing system on:

(jcole@zdclaw.com)
(bill@zdclaw.com)
Mr. Jeffrey A. Cole
Mr. William D. Sims
Zimmer, Duncan & Cole, LLP
Attorneys at Law
5000 South Broadband Lane, #119
Sioux Falls, SD 57108

          /s/ Zachary W. Peterson