1              UNITED STATES DISTRICT COURT

2                DISTRICT OF SOUTH DAKOTA

3                   NORTHERN DIVISION

4    * * * * * * * * * * * * * * * * * * * * * * * *
                                     *
5    SIOUX RURAL WATER SYSTEM,       *    1:15-CV-1023-CBK
     INC., a Non-Profit              *
6    Corporation,                    *
                                     *
7       Plaintiff,                   *
                                     *    TRANSCRIPT OF
8    -vs-                            *    STATUS HEARING
                                     *    December 21, 2016
9    CITY OF WATERTOWN, a South      *
     Dakota Municipality; and        *
10   WATERTOWN MUNICIPAL             *
     UTILITIES, an Agency of the     *
11   City of Watertown;              *
                                     *
12      Defendants.                  *
                                     *
13   * * * * * * * * * * * * * * * * * * * * * * * *

14                   TRANSCRIPT OF
                     STATUS HEARING
15
            BEFORE THE HONORABLE CHARLES B. KORNMANN
16             UNITED STATES DISTRICT JUDGE
                 ABERDEEN, SOUTH DAKOTA
17
                   * * * * * * * * * *
18


19   APPEARANCES:

20   Counsel for Plaintiff:  MR. JEFFREY A. COLE
                             Zimmer, Duncan & Cole LLP
21                           5000 South Broadband Lane, #119
                             Sioux Falls, South Dakota 57108
22
     Counsel for Defendants: MR. JACK H. HIEB
23                           Richardson, Wyly, Wise, Sauck,
                             Hieb LLP
24                           PO Box 1030
                             Aberdeen, South Dakota 57402
25

1    PROCEEDINGS held on December 21, 2016, 1:29 p.m.

2              THE COURT:  Thank you for coming today.  I

3    don't hold pretrial conferences usually.  I don't hold

4    status hearings like most of the federal judges do.  I

5    think it's a colossal waste of time and money.  But some

6    of the federal judges at least do that once a year while

7    the case is pending.  I've never done that except maybe

8    in a couple of cases.

9              The reason I wanted you to come up here for

10   this is to tell you what I think the law is and to tell

11   you what I think I'm going to do.  I think this is a

12   case that should be settled, frankly.  But if you don't

13   want to, that's fine, go to St. Louis, and spend some

14   more money.

15             I'm concerned about the fact that it's --

16   City of Watertown, if you will, and the Sioux Water

17   company, I think that's -- could be a source of bad

18   publicity, frankly.  So I'm trying to avoid that.  And

19   I'm going to give you some period of time to try to work

20   this out.  It seems to me that it should be worked out.

21   We're not talking about that many water users here.  And

22   there is a lot of uncertainty here.

23             I was the city attorney in Aberdeen for --

24   assistant city attorney -- for 17 years or something

25   like that before I took office in 1995.  And I was

1    therefore very familiar with what Aberdeen was doing by

2    way of expansion of the boundaries.  Aberdeen has been

3    very conservative on that.  I don't think any areas have

4    been annexed to the City of Aberdeen for many, many

5    years.  Watertown, on the other hand, has been very

6    aggressive on that policy.  I know that the Watertown

7    city limits go all the way out to Lake Kampeska.

8              Whereas, in Aberdeen we don't include

9    Rolling -- Rolling Meadows, Prairiewood, Jobee Acres,

10   Richmond Lake, Mina Lake, the Warner Road property.

11   There are a lot of areas that are very close to the city

12   limits in Aberdeen that have never been annexed, which

13   is fine.  And so that probably causes some of the

14   problems here.

15             Watertown in my opinion should not be

16   providing water service to these annexed areas.  I don't

17   think that water users in the annexed areas have any

18   right to tell the City of Watertown -- I'm just using

19   the City of Watertown generically for both entities --

20   that they have any right to tell the City that they want

21   water service from them.  They have no such right.  That

22   may be unwise public policy, but that's something that

23   Congress did and it's something that I should not be

24   interfering with.

25             Part of the problem here, of course, is that

1    Sioux -- I'm going to call them Sioux -- did not

2    establish themselves as a rural water district with more

3    definite boundaries.  They were set up, as you know, as

4    a not-for-profit corporation, which state law allows,

5    and by their Articles of Incorporation they include

6    Hamlin, Clark, and Codington counties.  That's a very

7    broad area.  I'm sorry -- Codington, Hamlin, and Deuel,

8    not Clark.

9          And so like I can see how there could be

10    some problems here and some disputes.  I understand that

11    Watertown claims that once they annex an area they can

12    provide water service to the people in that annexed area

13    who ask for it.  They don't have that right in my

14    opinion.  Nor do the people who live there or who have

15    businesses there have that right.

16          SDCL 9-47-22 cannot be used to frustrate

17    federal policy and federal law.  Now, I understand that

18    Sioux did not object to the use of that state statute in

19    some cases of water service questions in the past, and

20    did not perhaps properly assert their rights under 7

21    United States Code, Section 1926(b).  This in my opinion

22    does not justify principles of estoppel or waiver being

23    applied.  Nobody can agree to waive federal law which is

24    designed to guarantee that rural water systems are able

25    to repay their federal loans.  It may be unfair, but,

1  again, the Government, if you will, cannot be estopped.

2  There are many, many cases on that.

3          The Defendant here has demanded a jury

4  trial, whereas the Plaintiffs have not.  I'm wondering

5  if this case is not resolved if, in fact, the Defendants

6  want a jury trial.  These are not easy issues.  I don't

7  think there are that many factual disputes anyway.

8          Now, it may be that the Defendants want to

9  get this case over with so you can get to St. Louis.

10  And, if so, I'll make that possible.  My thought was I'd

11  give you maybe a month or so, whatever you think is

12  reasonable, to give you a chance to go through either

13  mediation or arbitration or something to figure out what

14  it is you can agree are the Sioux boundaries; try to

15  settle the thing in that manner.  And, again, maybe you

16  don't want to do that.

17          Now, some of the principles of law that I

18  believe are applicable here, other than what I've

19  already stated, you know what, and I'm not ruling on the

20  record from the bench today too, I'm just telling you

21  what I think.  But it will give you a pretty good idea

22  of what I'm going to do if necessary.

23          Any doubts as to whether the Plaintiff is

24  entitled to a protection from competition from the

25  Defendants should be resolved in favor of the Plaintiff

1    as an indebted party seeking protection under that

2    federal statute, 7 U.S. Code, Section 1926(b).  The

3    statute should be given what some courts -- other courts

4    have described as a "liberal interpretation" that

5    protects rural associations from municipal

6    encroachments.

7              We all agree I think that the pipes in the

8    ground test should be applied.  And the test is whether

9    the Plaintiff has "made service available" to the

10   disputed customers.  Does the Plaintiff have adequate

11   facilities within or adjacent to the area to provide

12   service within a reasonable amount of time after a

13   request for service is made.  And I think we all agree

14   that there must be both an adequate source and pipes in

15   the ground or to be in the ground.

16             I don't think there's any dispute here about

17   whether the qualifying federal loan or loans were --

18   included financing for the type of service to be

19   provided.  In other words, I don't think any of this

20   involved sewer services, for example.  I think we're

21   simply talking about water service.  And the word

22   "domestic" is thrown around and has various

23   connotations.

24             Certainly domestic service does not include

25   the right to -- or the obligation to provide water for

 1    fire protection.  In other words, if you live within the

 2    boundaries of the -- of the Sioux -- of the Sioux

 3    corporation, you take your chances and they're going to

 4    bring water out to your house in a truck just like they

 5    do in other rural areas.

 6              Just like those of us who live at

 7    Prairiewood here say if your house is on fire you better

 8    get out because they're not going to be there to put out

 9    the fire.  By the time the rural fire department gathers

10    in Warner or south of Warner -- or I should say between

11    Warner and Aberdeen and gets the people assembled and

12    get the equipment on and drive 10 or 15 miles, whatever

13    it is.

14              We know that the water service must conform

15    to state law requirements as to health and sanitation

16    codes.  And the service may not be unreasonably costly

17    or a delayed service.  So what do those things mean?

18    Those are very broad terms.  But I think that's an issue

19    to be decided in this case.  In other words, that -- if

20    you're -- if you're too slow in responding, or if what

21    you're offering is unreasonable and excessive and

22    confiscatory then you don't -- then Sioux doesn't have

23    the right to provide service.  But they don't have to

24    provide service immediately.  They have a reasonable

25    period of time.

1          The prices that they charge do not have to
2    be the same as the City charges.  They are entitled to a
3    fair profit.  There are various factors that the Court
4    should consider, whether the Plaintiff is seeking to
5    obtain more than a fair profit, whether the rate is
6    disproportionate to the services provided, whether other
7    similarly situated districts do not follow such
8    practices, and if the practice establishes an arbitrary
9    classification between or among various users.
10          But it is the burden of the Defendants here
11   to show that the costs of Plaintiff which are being
12   charged to their customers are unreasonable, excessive
13   and confiscatory.  That is a very high burden.
14          The Court is allowed to take into account
15   whether fire protection services make the cost
16   reasonable.  I don't think that's an issue in this case
17   because the district -- or the corporation is not
18   required to provide fire protection water services.
19          It is well established, although perhaps not
20   in the Eighth Circuit, that the Plaintiff's inability or
21   ability to provide water for fire protection is a factor
22   which the Court should consider in deciding whether the
23   Plaintiff has made service available.
24          It is correct as the -- as Watertown alleges
25   that the statute provides a shield and not a sword, thus

1   the Plaintiff has no right to seek to take away

2   customers of Watertown as acquired before the loan was

3   made or otherwise lawfully acquired by Watertown.

4           The -- the City cannot enter into contracts

5   with potential customers, as they did in at least one

6   case here, within the service area, which require that

7   potential customer to identify the City of Watertown.

8   They cannot threaten to de-annex areas to obtain

9   customers.

10          Putting it in another fashion, "A city may

11  not legally use inclusion of an area within the

12  boundaries of any municipal corporation as a springboard

13  for providing water service to the area and thereby

14  limit the services made available by a protected water

15  district," or in this case a corporation.  A city may

16  annex land within a water district's or corporation's

17  boundaries as long as it does not use the annexation as

18  a means to provide water service or limit the water

19  district services to the annexed area.  And I believe

20  this is exactly what Watertown has been doing.

21          The South Dakota statute 9-47-22 I believe

22  flies in the face of federal law and regulations.  The

23  legislature may not set the terms of purchase by cities

24  of customers within the service area of Plaintiff.  The

25  Court is going to be required -- or a jury perhaps -- is

1    going to be required on a customer-by-customer basis to

2    determine whether or not the Plaintiff has, in fact,

3    made water services available or is able to provide

4    water services within a reasonable period of time.

5              Now, again, the difficult thing is what is

6    the -- what is the service territory?  It would have

7    been much better, of course, if the water district had

8    been set up or then the territory is spelled out by

9    South Dakota law.  But that wasn't done here.  But,

10   again, the Articles of Incorporation say Hamlin, Deuel,

11   and Codington counties.  That's an awfully broad area.

12             I'm not sure exactly what Defendants contend

13   the service territory should be, and I'm not exactly

14   sure at this point what I think the service area is as

15   claimed by the district or the corporation.  And, of

16   course, we have questions on monetary damages.  I doubt

17   that those are big numbers by any means.  And attorneys

18   fees.  That's why I think that hopefully this matter can

19   be mediated or arbitrated to spell these things out.

20             I think, frankly, that the Plaintiff is

21   entitled to a summary judgment, which includes an

22   injunction enjoining Watertown from providing water

23   service to any of Sioux's current customers, from doing

24   what they've been doing by annexing areas and then

25   allowing customers to request water service from

1   Watertown.  They are probably entitled to an injunction

2   or a summary judgment on the issue of whether Sioux

3   should be required to provide fire protection to any

4   customer.  And summary judgment as to the Watertown's

5   affirmative defenses of estoppel, laches, and waiver.

6          There's no doubt that if there were a

7   dispute between private persons, the Plaintiff could

8   certainly be found to be estopped because they have

9   agreed to an unlawful practice.  But they cannot agree

10  to that because this is a federal law intended to

11  protect the federal treasury.

12         Well, that's the good news and the bad news,

13  I guess.

14         Do you have any comments or questions?

15  Start with the Plaintiff.

16         MR. COLE:  Your Honor, I don't have any

17  questions.  I guess I do think this is a case where

18  mediation should be explored.  We've had some

19  preliminary discussions on that.  We can check with

20  counsel here, but I think we're willing to mediate.

21  We've talked about even perhaps having a certain

22  mediator, but that kind of came apart this fall.  But I

23  think 60 to 90 days to mediate it, perhaps even set a

24  trial date if the Court is so inclined sometime after

25  that.  Gives us some pressure, some incentive to get the

 1   case resolved if we can.

 2            THE COURT:  Okay.  That's Mr. Cole that's

 3   speaking now.  This hearing if you can call it that is

 4   being recorded so I think a court reporter -- you could

 5   hire a court reporter to transcribe what's being

 6   recorded here.  A court reporter wasn't available today

 7   and I didn't think was necessary anyway because this is

 8   not a ruling -- any ruling or anything from the bench.

 9            Okay.  I thank you for that.

10            Do you have any comments, Mr. Hieb?

11            MR. HIEB:  I do have one question because I

12   think there's a -- maybe a --

13            THE COURT:  You should stand, counsel.

14            MR. HIEB:  Oh, excuse me.  I always have a

15   hard time.  I'm too tall for the mic.  Can you hear me

16   okay?

17            THE COURT:  Yes, I can.

18            MR. HIEB:  I think there's some question

19   about the definition of fire protection at least in my

20   mind.  I understand exactly what the Court is saying and

21   I've read any number of cases where they talk about, you

22   know, that a rural -- a district is not required to

23   provide fire protection in the form of hydrants and

24   mains with sufficient pressure to hook a hose up and put

25   out a house fire.

1            The question I think that's come up in the

2    context of this case, and maybe it wasn't fleshed out

3    that well yet in the briefs, really relates more to the

4    fire protection needs of a particular commercial

5    business that has a sprinkler system in it that

6    obviously needs that in order to meet the building codes

7    and to keep their business from burning down.

8            Does the Court equate those two in the

9    Court's analysis or is the Court simply talking about

10   hydrants and what we normally think of when we think

11   about fire protection for housing developments?  Because

12   the cases that I've read that's been the issue.  You

13   know, it's that big infrastructure and high pressure

14   that needs to be there for that.

15           THE COURT:  My thought -- and of course this

16   may very well be an issue of fact that we should have

17   evidence on -- but as I looked at the file and all these

18   documents, which I've looked at all of them, I think

19   that really the only issue on that would be -- deal with

20   Lou's Fireworks.  I don't think an ordinary business has

21   anymore need for fire protection, if you will, than some

22   of these residents.  That's my thinking on the thing.

23           MR. HIEB:  Okay.

24           THE COURT:  But again -- that's something,

25   again, that could be factored into mediation or

1   arbitration or something.  Common sense.

2           MR. HIEB:  Sure.  And I simply wondered

3   because the Court had said that's my opinion on fire

4   protection and I didn't know if you were including that

5   in the broadest sense possible or if you were simply

6   talking about what we normally talk about with hydrants

7   and lines.

8           The second question that I have because I'm

9   a little unclear about this.  When you say the

10  annexations that the City of Watertown has undertaken.

11  Are you starting at some particular time there?

12          THE COURT:  I think anything after the loan

13  was made.  Or the grant was made.  No, it's a loan, I

14  guess.  It isn't a grant.

15          MR. HIEB:  Okay.  And then, finally -- and

16  I'm asking you this because if we're going to sit down

17  and mediate and try to resolve this we kind of have to

18  have an idea of where the Court is at on this with

19  respect to it --

20          THE COURT:  I think you've taken a lot of

21  their customers that you were not entitled to take.

22  Depending on when -- I don't know how many annexations

23  you have gone through since that loan was made.  I don't

24  know.  Maybe it's not that many.

25          MR. HIEB:  Well -- but, Your Honor, in the

1   example of a bare ground annexation, for instance, where

2   there are no customers and then after the annexation

3   occurs people build houses and we start serving them

4   with water.  If I understand the Court's analysis,

5   that's not a violation of this federal statute, we're

6   not taking their customers, unless -- unless we're

7   considering that bare ground to be some exclusive

8   territory of theirs.

9           And that's where I was a little bit confused

10  because I think the majority of our annexations -- or at

11  least the ones that involve residential types of

12  situations were bare ground annexations.  And that where

13  I -- I don't know that the record is that complete when

14  it comes to the nature of these annexations that the

15  Court may be referring to.

16          Because I think the record would reflect

17  that there have only been three actual customers that

18  were hooked up to Sioux that are now being served by

19  Watertown Municipal Utilities.  That's what we were able

20  to identify.

21          THE COURT:  Three customers that have

22  changed?

23          MR. HIEB:  That arguably have changed.  I

24  mean, in the one case you had an abandoned farm and it

25  became Titan Machinery.  That abandoned farm as I

1    understand it had been previously served by Sioux at one

2    time.  So there was a water service there.  But

3    that's -- that's what I believe the record reflects.

4              THE COURT:  I think what I'm saying is that

5    any annexation is immaterial.  If you annex areas within

6    their service territory, again, whatever it is, then you

7    cannot hook up people who later build in that area.

8              MR. HIEB:  And therein lies the dilemma from

9    our standpoint, obviously.  I guess until -- and I don't

10   -- I guess maybe I can engage in a colloquy with the

11   Court on that issue.  I don't really believe, frankly,

12   that what is their territory is a question of fact for a

13   jury anyway.  I mean, I think that is a decision that's

14   going to need to be made by the Court at some point in

15   time.

16             THE COURT:  Well, perhaps.  That's a good

17   question.

18             MR. HIEB:  And I really think which is much

19   of what Mr. Peterson was driving at in our briefs in

20   this case.  And I never try to take credit for his

21   briefs because they're better than what I write.  That

22   is really the seminal question that until it's answered

23   there's no way to say that, you know, what's been done

24   is wrong or right.  Because as I pointed out, there to

25   our knowledge are only three customers that were ever

1    hooked up -- and that's arguably three -- that were

2    later hooked up and later switched over.  I think the

3    rest of the testimony that the Court is referring to is

4    referring to I guess hypothetical situations, which

5    really haven't occurred at this point.

6              THE COURT:  In my opinion the policy of

7    Watertown allowing people within annexed areas to ask

8    for water service and get it, that's illegal.

9              MR. HIEB:  Unless that annexed area is not

10   part of their territory.

11             THE COURT:  Well, that's true.  I mean, if

12   they are unable to serve it.

13             MR. HIEB:  Well, I guess that's my question.

14   If the pipes in the ground test, if the ability to serve

15   is going to be the sole determining factor on defining

16   their territory, then I think their territory is largely

17   unlimited.  I mean, I think that, you know, if we're

18   going to use three counties, then the entire city of

19   Watertown lies within their territory if they're going

20   to be allowed to self-define their territory.

21             THE COURT:  Well, clearly that wouldn't

22   be -- that would be impossible.  That's -- obviously

23   those three counties are way too big to comprise their

24   territory.

25             MR. HIEB:  I would agree with that, Your

1    Honor.

2              THE COURT:  Within that -- the pipes in the

3    ground is a big matter that's for sure.  Or that they

4    will put pipes in the ground.

5              MR. HIEB:  I agree with that.  But, once

6    again, that can't be the unlimited test.  I mean,

7    because with all candor, Your Honor, looking at the

8    cases that I've read, city limits are irrelevant, which

9    I think the undisputed testimony in this case is we

10   understand that.  And they seem to believe that.

11             So when you say, well, that's impossible

12   that they could have all three of those counties, I'm

13   not sure what limits it if there isn't going to be some

14   limit placed.  And that's the difference between an

15   entity that is not governed by anyone.  If they would

16   have gone to the State of South Dakota and asked for a

17   district and tried to include, you know, areas that the

18   state would have said, no, no, no, you're not going

19   there, then, you know, there's a limitation.  And I just

20   think under this rhetoric there isn't one.  You know,

21   they can do as they please and in this case come to the

22   party essentially.

23             THE COURT:  Well, they may be asking for too

24   much, I don't know.  As to what has happened thus far, I

25   don't think they're asking for too much.  I think

```
 1   they're entitled to it.  That's why mediation and
 2   arbitration is a good thing.  This is not the typical
 3   case.
 4               MR. HIEB:  I think you've answered my
 5   questions.
 6               THE COURT:  All right.  Thank you.
 7               You know, as I've said many times, the only
 8   advantage that I know of in going to federal court under
 9   all the rules and regulations that are very difficult to
10   follow sometimes, is that you can get a free mediation
11   session if you want it.  Now, back when Judge Simko was
12   a full-time magistrate in Sioux Falls he was a great
13   mediator because he has tried hundreds of cases as a
14   lawyer.  I don't know about the capabilities of other
15   magistrate judges.  I would not expect a part-time
16   magistrate to agree to a free mediation so that rules
17   out Judge Moreno in Pierre and Judge Gerdes here and the
18   magistrate in Rapid City.  So the only full-time
19   magistrate is Judge Duffy in Sioux Falls.
20               I frankly don't know how many cases she
21   tried as a lawyer.  I've only had her mediate one case
22   and that didn't work.  But the parties themselves worked
23   out something the next week or so.  I used to use a
24   magistrate from Fargo, Judge Kline who was a full-time
25   magistrate but she has retired.
```

1          So I really don't know what's available in

2     that regard.  You might be better off just to hire

3     somebody who would do that.  There's lots of them in

4     Sioux Falls that's for sure.

5          Well, any other questions or comments?  Do

6     you want me to wait to see if you can work it out?

7          MR. HIEB:  As far as we're concerned, yeah.

8     Your Honor.  I'd like to talk to my clients and I'd like

9     to at least try to explore it.

10         THE COURT:  Give them some of the bad news,

11    that's right.

12         MR. HIEB:  They're sitting here, Your Honor.

13         THE COURT:  All right.  Okay.  Well,

14    somebody is always unhappy regardless of how I rule.

15         MR. COLE:  That's fine with us too, Your

16    Honor.

17         THE COURT:  Okay.  Well, I'm going to

18    Florida January 9th and I won't be back until late

19    April, maybe early May, and I've got a terrible

20    caseload.  Business is booming here.  I've got more

21    civil cases pending than they have in Pierre, and the

22    number of criminal cases is really exploding also.  And,

23    of course, I've got to deal with those criminal cases

24    first since some of those people will be in jail for all

25    of that time.  But I'll just wait and will you let me

1   know -- let's give you what, two months?  That ought to

2   be enough time.  And you're going to know, either it's

3   going to go or it's not going to go by that time.  And I

4   would say you should take a shot at working out

5   questions of attorneys fees, damages, and the service

6   territory.  And so it's a give and take obviously like

7   anything else.

8                  Mr. Hieb?

9                  MR. HIEB:  If we can't get it worked out

10  would it also be beneficial to the Court to address some

11  of those other issues that the Court has brought up

12  about jury trial --

13                 THE COURT:  Yes.

14                 MR. HIEB:  -- or if we want a quicker trip

15  to St. Louis the Court will accommodate us, that sort of

16  thing?

17                 THE COURT:  That's right.  I don't think a

18  jury trial here makes much sense.  That's up to you.

19  Let's see, the Plaintiff didn't ask for one.

20                 MR. HIEB:  We're going to maintain ours if

21  we do need to go to trial, Your Honor.

22                 THE COURT:  Okay.  That's fine.  Sure.

23  Juries don't make very many mistakes in my experience.

24  In the nearly 22 years I've been on the bench I've set

25  aside one jury verdict and that was where the jury found

1    against the IRS.  That wasn't surprising.  I was

2    affirmed by the Eighth Circuit on that.  But generally

3    juries do the right thing.

4                   Okay.  Anything else?

5                   MR. COLE:  No, Your Honor.

6                   THE COURT:  Okay.  If you want to get as I

7    say a transcript of this so you get it down I think that

8    would be available.  I don't think you can simply get a

9    copy of the recording; is that right?  She says you

10   can't get that.  But a court reporter could listen to

11   that.  Do either of you want that done?

12                  MR. HIEB:  We may, I think, you know, just

13   to have something to refresh ourselves a little bit if

14   we're going to be trying to resolve this.

15                  THE COURT:  And to show your clients.

16                  MR. HIEB:  Right.

17                  MR. COLE:  We would, Your Honor.

18                  THE COURT:  Yeah.  Well, why don't you

19   call -- we'll call Cheryl?  Or call Leslie, Judge

20   Moreno's secretary.  She's a court reporter in Pierre.

21   What's her last name?  Leslie Hicks, that's right,

22   sorry.  So just give her a call at the magistrate's

23   office at the courthouse in Pierre and she'll do that

24   for you.  If you want to split the cost or something, I

25   don't know.

1            Okay.  That's good.  The briefs filed by the

2   parties have been very good.  They've been very helpful

3   to me and I appreciate that.  We have lawyers on both

4   sides that are good lawyers so that's good.  I don't

5   always have that, unfortunately.

6            Okay.  Anything further?  If not, have a

7   Merry Christmas everybody.  Court's in recess.

8            (End of proceedings at 2:03 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    STATE OF SOUTH DAKOTA.    )
                                )          CERTIFICATE
 2    COUNTY OF HUGHES          )

 3

 4       I, Leslie Hicks, Notary Public and Registered

 5    Professional Reporter in and for the State of South

 6    Dakota, do hereby certify that the Transcript of the

 7    Status Hearing contained on the foregoing pages 1

 8    through 23, inclusive, were reduced to stenographic

 9    writing and thereafter transcribed; that said FTR

10    recorded proceedings commenced on December 21, 2016, in

11    the Courtroom of the United States District Courthouse,

12    Aberdeen, South Dakota, and that the foregoing is a

13    full, true and complete transcript of my shorthand notes

14    of the FTR recorded proceedings had at the time and

15    place above set forth.

16       Dated this 5th day of January, 2017.

17

18

19                     /s/ Leslie Hicks
                       Leslie Hicks
20                     Registered Professional Reporter
                       225 S. Pierre Street, #413
21                     Post Office Box 7147
                       Pierre, South Dakota 57501
22                     (605) 945-4612
                       Leslie_Hicks@sdd.uscourts.gov
23

24

25
```