```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF SOUTH DAKOTA
                         NORTHERN DIVISION
```

| | | |
|---|---|---|
| SIOUX RURAL WATER SYSTEM, INC., <br> a Non-Profit Corporation <br><br> Plaintiff, <br><br> -vs- <br><br> CITY OF WATERTOWN, a South Dakota Municipality, and WATERTOWN MUNICIPAL UTILITIES, an agency of the CITY OF WATERTOWN, <br><br> Defendants. | | Civ. 15-1023 <br><br><br><br><br> **BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS IN LIMINE** |

The defendants, City of Watertown ("City") and Watertown Municipal Utilities ("MU"), respectfully ask that the Court enter Orders in Limine against Sioux Rural Water System, Inc. ("Sioux"), for the reasons that follow.

## BACKGROUND

Sioux has disclosed two experts in this case: Darin Schriever, PE, and Richard D. Westbrook, CPA, CFF. Mr. Schriever prepared a written report dated February 5, 2016.[1] Mr. Westbrook prepared a written report dated March 15, 2016. As to each report, Sioux's Expert Disclosure states that the reports "will be supplemented if necessary in accordance with Rule 26(e) of the

---

[1] Excerpts of Mr. Schreiver's report were previously filed at Docs. 27, 33-5, and 34-6.

Federal Rules of Civil Procedure, as merited by further discovery."

Mr. Westbrook's report states that his report presents his findings and opinions as of March 15, 2016. The report goes on to state opinions relating to Sioux's loss of revenue, based on an assumption that Sioux will be able to serve <u>192</u> disputed customers in future years. Although Mr. Westbrook's report states that "[t]he System has short range plans to improve the system for current customers and to be able to take on the additional 157 customers noted in the engineer's report," the report has not been amended or supplemented since it was created to account for any *actual* changes in the system that took place in 2016 or 2017.

The assumptions in Mr. Westbrook's report are based on the engineering study conducted by Mr. Schriever. Mr. Schriever was deposed on June 29, 2016. At that time, he testified that Sioux did not currently have adequate facilities in place to serve potential new west side customers, which is where the majority of the 192 disputed customers are located. Both distribution and source improvements would be needed. (Doc. 34-5, Schriever 28, 57.) Even with the projects that were happening at that time, Mr. Schriever conceded that Sioux was not increasing its source capacity:

    Q    All right. The west side couldn't really be added without making some improvements.

>    A    That's correct.
>
>    Q    And those improvements that need to be added in order to supply any of these potential customers on the west side, are they distribution improvements, source capacity improvements, or some of both?
>
>    A    To serve all of the identified users on the west side, they would need to make both distribution and source improvements.
>
>    Q    Now, we know from your testimony that the project that is currently underway will add some distribution capacity to the west side, correct?
>
>    A    Correct.
>
>    Q    It doesn't add any source capacity, does it?
>
>    A    Not the currently funded project, no.
>
>    Q    Okay. So even when that project is complete, they still wouldn't be able to service all of these customers on the west side, correct?
>
>    A    Correct.

(Id., Schriever 57.)

The improvements will add distribution capacity, but not source capacity to the west side. (Id., Schriever 57-58.) Even with the improvements, Mr. Schriever testified that Sioux would be unable to service all of the potential customers on the west side. (Id.) At that time, the area studied on the west side of Watertown was operating at or near full capacity under peak demand conditions. (Id., Schriever 64-65.)

In other words, as discovery came to a close in this case, defendants' understanding was that, while Sioux had plans

to increase its distribution capacity to help with the issues on the west side of Watertown, it did not anticipate making source capacity improvements.

Sioux's manager provided the following in his affidavit, dated November 7, 2016:

> 44. Sioux completed a project on the west side of its system generally between Pelican Lake and Lake Kampeska to address minor pressure issues. That project was completed in the summer of 2016.

(Doc. 26, pg. 8.)

Sioux apparently made certain improvements to its system in 2016. The problem is that Sioux has not disclosed in this lawsuit the precise nature of the improvements that were actually completed, where they were completed, or the impact upon its expert opinions, which have never been supplemented or amended to account for system changes.

Sioux has, however, made some unsupported statements about its system's abilities following the improvements. In support of its summary judgment motion, Sioux argued: "It's true that Sioux's engineer testified that adding West Side customers was limited until the scheduled distribution improvements were completed. Those distribution improvements have been completed. In fact, with the distribution improvements <u>Sioux can serve an additional 192 customers on the West Side</u>." (Doc. 45, pg. 4 (emphasis added); <u>see</u> <u>also</u> Doc. 38, pg. 12; Doc. 39, pg. 13, ¶44.) The statement that Sioux can serve 192 additional

customers appears in two of Sioux's briefs and its response to defendants' statement of undisputed facts. But it was not supported by a citation to any documents or testimony. It also squarely contradicts Mr. Schriever's sworn testimony, above, regarding the need for additional source capacity before 192 additional customers could be added and served.

Neither the documents produced in discovery nor the current expert opinions that have been disclosed explain the dramatic change in Sioux's system that supposedly allowed Sioux to go from being able to serve 30-35 new customers to 192 new customers. It begs the question - what has Sioux not disclosed that it intends to introduce for the first time at trial?

## ARGUMENT

### A. Sioux should be precluded from relying upon previously undisclosed documents to support its claims.

Rule 26(a) mandates that Sioux disclose all witnesses and documents that it may use to support its claims. Rule 26(e) of the Federal Rules of Civil Procedure outlines the duty to supplement Rule 26 Disclosures:

> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise

>> been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.
>
> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e).

Rule 37(c)(1) provides that a party that, without substantial justification, fails to disclose information required by Rule 26(a) or 26(e) shall not, unless such failure is harmless, be permitted to use as evidence any witness or information not so disclosed. In this case, the Court specifically ordered that "[s]upplementations under Rule 26(e) shall be due within a reasonable time after the party becomes aware of information that should be disclosed under Rule 26(e), which, in any event, shall be completed <u>no later than sixty (60) days prior to trial days (sic) prior to trial</u>." (Doc. 54.) (Emphasis added.)

Defendants' position is simple - if Sioux has new maps, illustrations, diagrams, as-built plans, or other documents showing the locations where the improvements to its system were made, it's too late for Sioux to utilize them. Sioux has failed to supplement its disclosures with any documents showing the

precise nature, location, or effect of Sioux's recent system improvements, which were presumably made in 2016.  Instead, it has disclosed expert reports discussing *intended* improvements as of 2013.  Its own engineer, Mr. Schriever, testified that those intended improvements would not increase source capacity, which would be needed to serve an additional 192 customers.

No supplemental disclosures were made following Mr. Schriever's testimony.  If Sioux has additional documents concerning its improvements, it is far too late for defendants to share the documents with their experts in order to analyze them before trial.  To allow Sioux to introduce such things before the jury for the first time would contravene the letter and spirit of the rules of procedure.  An Order in Limine should be entered to prevent this.

**B.   Sioux should be precluded from presenting new or supplemental expert opinions that were not timely disclosed.**

As noted above, Rule 26(e)(2) provides that a party's duty to supplement extends both to information included in expert reports and to information given during the experts' depositions.  Regardless of whether the deadline follows the language of the federal rule (30 days prior to trial) or the Court's scheduling order (Doc. 54) (60 days prior to trial), it is now too late for Sioux to introduce new or supplemental opinions.

In Chavez v. Loiseau Construction, Inc., 2006 U.S. Dist. LEXIS 58065, 2006 WL 2382330 (D.S.D. August 16, 2006), a

South Dakota District Court excluded the proffered testimony of a plaintiff's expert that was not properly disclosed pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. In Chavez, during discovery, the plaintiff only provided the defendants with the names and employment information of each of the plaintiff's experts. The plaintiff failed to disclose a number of items concerning their experts, including a statement of the opinions and facts relied upon by the expert for their opinions. The defendants sought to prevent the plaintiff's expert from testifying at trial because of the plaintiff's failure to follow the rules regarding expert witness disclosure.

The court, in limiting the plaintiff's expert testimony to that properly disclosed by the plaintiff, recognized that the discovery rules are in place to allow "both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." Id. at 14-15 (citations omitted). Under Fed. R. Civ. P. 37, when a party fails to comply with the discovery rules, the party is precluded from using the non-disclosed evidence at hearing or trial, unless there is "substantial justification" for the failure. Id. at 15.

The defendants do not take issue with the quality of Sioux's expert disclosures, assuming they represent *all* of the experts' intended opinions. The danger here lies in the position that the defendants will be put in if new opinions are solicited

during Sioux's case-in-chief in front of the jury.  Obviously, Sioux has made some changes to its system since the expert disclosures were initially made.  But Sioux has not updated its expert disclosures in any fashion whatsoever.  The defendants would be unfairly prejudiced if Sioux's attorney is allowed to ask questions that would force the defendants to repeatedly interrupt the testimony with objections.

For these reasons, the defendants request an Order in Limine precluding Mr. Schriever and Mr. Westbrook from expressing any previously undisclosed opinions which were not set forth in their reports.

**C.    Sioux should be precluded from presenting evidence regarding its system's 2017 capabilities, because such evidence is irrelevant to the appropriate "pipes in the ground" inquiry.**

Based on the documents and expert opinions Sioux has produced, Sioux apparently wants to utilize evidence of its system's *current* capabilities in order to buttress claims that it could serve the 192 disputed customers.  But 2017 is not when Sioux's capabilities should be examined. Rather, the proper inquiry is whether Sioux could have served these 192 disputed customers when the areas were annexed and the disputed customers were in need of water.  See e.g. Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 713 (10th Cir. 2004) (chastising the district court for limiting its examination to the water association's ability to provide service today, because

a water association meets the pipes-in-the-ground test by demonstrating that it has adequate facilities within or adjacent to the area to provide service to the area *within a reasonable time after a request for service is made*).  Thus, even if the court denies the preceding motions, evidence relating to Sioux's current capabilities is irrelevant and should be excluded.  It would be unfairly prejudicial and confusing to the jury to allow such evidence to be presented.

**D.   Additional Motions.**

    **1.   Sequestration.**

Federal Rule of Evidence 615 clearly requires the Court to exclude witnesses from the trial of this matter so they cannot hear the testimony of other witnesses before they testify.  The only exceptions to that rule are set forth within the body of the rule itself.  The rule does not authorize exclusion of: (1) a party who is a natural person; (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney; or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present.  Defendants moves that all witnesses, with the exception of the parties' designated representatives and experts, be sequestered.

### 2. Insurance.

Evidence or testimony that defendants are insured or members of a risk pool would be unfairly prejudicial and should be precluded. From an evidentiary standpoint, there is no valid reason for introducing such evidence in this trial. Federal Rule of Evidence 411 clearly indicates that evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. See also Hoffman v. Royer, 359 N.W.2d 387, 391 (S.D. 1984) ("The fact that a defendant has liability insurance is not a relevant issue in a personal injury action. *It is therefore not admissible evidence*.").

Rule 411 lists a few exceptions to the general rule, but there is no issue between Sioux and defendants that should require the issue of whether defendants are insured to come up during the trial of this matter. As a result, defendants seek the order requested in their motion.

### 3. Settlement.

Federal Rule of Evidence 408 states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

\* \* \*

00186105.WPD / 1                          11

> This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

None of the exceptions found in the rule would apply to any settlement negotiations between Sioux and defendants. The motion should be granted, without exception, as to any offers made by the parties.

## **CONCLUSION**

Based on all these reasons, defendants respectfully urge the Court to enter Orders in Limine enjoining Sioux accordingly.

Respectfully submitted this 14th day of August, 2017.

```
                     RICHARDSON, WYLY, WISE, SAUCK
                      & HIEB, LLP



                     By   /s/ Zachary W. Peterson
                          Attorneys for Defendants

                     One Court Street
                     Post Office Box 1030
                     Aberdeen, SD  57402-1030
                     Telephone No. 605-225-6310
                     Facsimile No. 605-225-2743
                     e-mail: zpeterson@rwwsh.com
```

**CERTIFICATE OF SERVICE**

   The undersigned, one of the attorneys for defendants, hereby certifies that on the 14th day of August, 2017, a true and correct copy of **BRIEF IN SUPPORT OF DEFENDANTS' MOTIONS IN LIMINE** was served electronically through the District Court CM/ECF filing system on:

(jcole@zdclaw.com)
(bill@zdclaw.com)
Mr. Jeffrey A. Cole
Mr. William D. Sims
Zimmer, Duncan & Cole, LLP
Attorneys at Law
5000 South Broadband Lane, #119
Sioux Falls, SD  57108

            /s/ Zachary W. Peterson