```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF SOUTH DAKOTA
                         NORTHERN DIVISION
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| SIOUX RURAL WATER SYSTEM, INC., <br> a Non-Profit Corporation <br><br> Plaintiff, <br><br> -vs- <br><br> CITY OF WATERTOWN, a South Dakota <br> Municipality, and WATERTOWN <br> MUNICIPAL UTILITIES, an agency of <br> the CITY OF WATERTOWN, <br><br> Defendants. | Civ. 15-1023 <br><br><br><br> **DEFENDANTS'** <br> **PRE-TRIAL BRIEF** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## INTRODUCTION

This court filed its Opinion and Order (Doc. 52) regarding the parties' motions for summary judgment on April 12, 2017. The Court ruled that, as a matter of law: (1) Sioux Rural Water System, Inc. ("Sioux") has a legal right to provide services to present and future customers in its service territory; (2) Sioux is not required to provide fire protection as a prerequisite to protection under 7 U.S.C. § 1926(b); and (3) defendants, City of Watertown and Watertown Municipal Utilities, cannot assert the affirmative defenses of estoppel, laches, or waiver in defense of Sioux's claims.[1]  The Court found that

---

[1] So the Court is aware, defendants may need to make an offer of proof on these issues at trial in order to ensure the record is complete. In particular,

questions of fact remained as to whether Sioux could satisfy the "pipes in the ground" test as to those customers Sioux claims were taken from it by defendants.

The jury will be called upon primarily to determine whether Sioux is entitled to damages, while the Court will rule on Sioux's entitlement to injunctive relief.  This brief's primary focus is on the deficiencies in Sioux's evidence with respect to its ability to make service available, which Sioux must satisfy in order to obtain the protection of 7 U.S.C. § 1926(b).

## ARGUMENT

**A.  In order to be protected by § 1926(b), Sioux must prove that it made service available.**

Under 7 U.S.C. § 1926(b), Sioux must satisfy three specific requirements before it may obtain the law's protection:

(1)  It is an "association";

(2)  Its services were limited by the expansion of Watertown's boundaries during the term of its indebtedness; and

(3)  It has provided or made service available to the customers in the disputed area.

Public Water Supply Dist. v. City of Lebanon, 605 F.3d 511, 521 (8th Cir. 2010).  While Sioux has the burden on all of these

---

defendants would like to present evidence relating to Sioux's agreements relating to Titan Machinery and Big Shot Fireworks.

issues, the third requirement - whether Sioux has made service available - is the primary issue to be decided by the jury.

"Making service available has two components: (1) the physical ability to serve an area; and (2) the legal right to serve an area." Id. at 521 (quoting Rural Water System #1 v. City of Sioux Center, 202 F.3d 1035, 1037 (8th Cir. 2000)). The Court has concluded that Sioux has a legal right to serve, so the factual issue that remains for trial is whether it had the physical ability. Under the "pipes in the ground" test used in water service cases, courts examine whether a water association has adequate facilities within or adjacent to the area to provide service to the area within a reasonable amount of time after a request for service is made. Id. at 523. Importantly, it is Sioux's burden to prove that it satisfies the "pipes in the ground" inquiry. See Bell Arthur Water Corp. v. Greenville Utilities Commission, 173 F.3d 517, 526 (4th Cir. 1999) (holding that, for § 1926(b) to apply, an association must demonstrate as a threshold matter that it has adequate facilities within or adjacent to the area to provide service).

At trial, Sioux must show that it historically had and currently has the capacity and ability to provide service to the customers in the disputed areas. "Inherent in the concept of providing service or making service available is the capability of providing service or, at a minimum, of providing service within a reasonable time." Id.; see also North Alamo Water

Supply Corp. v. City of San Juan, 90 F.3d 910, 916 (5th Cir. 1996) (holding that a water association may establish the availability of service under § 1926(b) by demonstrating, *inter alia*, that it "has lines and adequate facilities to provide service to the disputed areas"); Lexington - South Elkhorn Water Dist. v. City of Wilmore, 93 F.3d 230, 238 (6th Cir. 1996) (noting that "an association's ability to serve [under § 1926(b)] is predicated on the existence of facilities within or adjacent to a disputed property").

### 1. Sioux cannot prove that it could have provided timely water service to the 192 disputed customers upon which Sioux's damage claim is based.

At the onset, the Court needs to understand the damage claim that Sioux has presented via its expert disclosures. Perhaps the biggest misnomer that has persisted in this case is the idea that defendants went about annexing property and taking over Sioux's customers. This is simply not so.

Sioux's experts have isolated 192 customers that defendants hooked up years ago when the City of Watertown annexed certain undeveloped property. To be sure, these 192 customers were not former Sioux customers; and, at the time of annexation, Sioux would not have been able to serve them. Sioux makes the dubious claim that, as of 2017, its system can *now* serve these 192 customers. Thus, it seeks annualized damages for the loss of these 192 customers (that it never historically had) for the life

of its loans with the federal government through 2049. All told, the present value of these "losses" is claimed to be $1,675,476.

Because the evidence at trial will show that Sioux could not have made service available at the time the defendants connected service with the 192 disputed customers, Sioux's exorbitant damage claim will fail. In reality, Sioux still cannot make water service available to the 192 disputed customers. As argued in support of defendants' motions in limine, defendants are familiar with the state of Sioux's system as it existed prior to projects that were slated to occur in 2016. However, Sioux has not supplemented its initial disclosures or discovery responses to disclose the nature of the improvements that were made in 2016 or 2017, let alone provided as-built plans or anything of the sort. The properly disclosed maps, diagrams, and expert opinions should be the only evidence available for Sioux's use. See Fed. R. Civ. P. 37(c)(1).

Sioux cannot support the claim that it is entitled to damages for the 192 disputed customers, for a couple reasons. First, the overwhelming majority of the 192 disputed customers are on the west side of Watertown. Sioux's appetite for these customers ignores its system's deficient capacity. Defendants' experts will testify that, at the time they examined Sioux's system in early 2016, existing Sioux users on the west side experienced pressures less than the 10 States Standard's minimum pressure recommendation. Sioux's expert engineer, Darrin

Schriever, conceded in his deposition that the west side is an area where Sioux is operating at near full capacity. Both source and distribution capacity is necessary to serve a customer. Mr. Schriever confirmed that, even with projects that were to occur in 2016, Sioux will not be increasing its source capacity. Mr. Schriever has neither supplemented nor amended his report or testimony.

Second, temporally, there is a disconnect in Sioux's damage theory. Sioux apparently wants to utilize evidence of its system's 2017 capabilities in order to buttress claims that it could serve these 192 disputed customers. But 2017 is not when Sioux's capabilities should be examined. Rather, the proper inquiry is whether Sioux could have served these 192 disputed customers when the areas were annexed and the disputed customers were in need of water. See e.g. Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 713 (10th Cir. 2004) (chastising the district court for limiting its examination to the water association's ability to provide service today, because a water association meets the pipes-in-the-ground test by demonstrating that it has adequate facilities within or adjacent to the area to provide service to the area *within a reasonable time after a request for service is made*).

The 192 disputed customers did not come to Sioux asking for water. Nor were they customers that, at the time of

annexation, Sioux could have served within a reasonable time. In other words, these were not "stolen" customers. The fact that Sioux claims to have the ability to serve these 192 customers *in 2017* is irrelevant. The question is whether Sioux could have served them at the time the annexations occurred. Nothing produced in discovery suggests that such service could have been provided.

      Sioux's approach to this case is to look at areas Watertown annexed and customers it hooked up within the last 40 years, and use Sioux's post-annexation improvements to make the present-tense argument that these customers are now in its territory and it is entitled to damages going forward. Setting aside the entire "shield vs. sword" analysis, the problem is that giving Sioux this type of "monopoly" status over an undefined territory undermines the very purpose of the federal law. Section 1926(b) was intended to promote rural water development. Rural water growth would be stunted if cities like Watertown are held to have violated § 1926(b) by providing service before Sioux even has the capability to make service available. In addition, rural water customers would not be served by an interpretation that makes Sioux's statutory monopoly effective regardless of whether Sioux has truly made service available.

      Once the Court has heard Sioux's evidence in its case-in-chief - which should be confined to items properly disclosed

in discovery - it should rule that Sioux's $1.6 million damage claim is unsustainable, as a matter of law.

**2. Sioux is not entitled to a permanent injunction.**

The standard for determining whether a permanent injunction should issue is essentially the same as the familiar standard for a preliminary injunction. Amoco Prods. Co. v. Village of Gambell, 480 U.S. 531, 546 n. 12 (1987). However, the movant must show actual success on the merits. Id. at 546. The Eighth Circuit Court of Appeals has identified four factors to be considered in determining whether or not to grant a permanent injunction: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest. Forest Park II v. Hadley, 336 F.3d 724, 731 (8th Cir. 2003); Dataphase Sys. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

    **a. Sioux cannot succeed on the merits because it is not entitled to the protection of 7 U.S.C. §1926(b).**

The threshold question that must be answered in addressing Sioux's claim for injunctive relief is whether Sioux is even entitled to the protection of 7 U.S.C. § 1926(b). For the reasons discussed above, defendants believe the evidence at trial will conclusively demonstrate that Sioux lacks the physical

ability to serve the disputed areas.  Thus, it cannot satisfy the pipes in the ground test or show success on the merits.

### b. Sioux does not face an imminent threat of irreparable harm.

Because Sioux's inability to succeed on the merits is dispositive, the Court does not need to reach the threat of irreparable harm element for injunctive relief.  But if the Court reaches this element in its analysis, it will quickly realize that it is an insurmountable roadblock to Sioux's request for injunctive relief.

Courts heavily weigh the threat of irreparable harm factor.  "[T]he movant's failure to sustain its burden of proving irreparable harm ends the inquiry 'and the denial of the injunctive request is warranted.'"  Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991) (quoting Gelco Corp. v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987)).  The key word in the irreparable harm factor is "irreparable" because "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  Sampson v. Murray, 415 U.S. 61, 88 (1974) (internal quotation omitted).  Sioux must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 23 (2008) (emphasis in original).

Sioux is far from financial dire straits. Sioux's expert testified in his deposition that Sioux can keep doing what it is doing without any capital improvements to its system and make it work:

> Q   And from what I can tell, in looking at this report and the rest of what you've provided, Sioux could do that as long as they didn't take on new customers or have an increase in the demands being made by their current customer base.
>
> A   I believe that's generally true.
>
> Q   And from your review of the financials, at least at the time of this report, that provided them adequate cash flow to pay their bills and operate, right?
>
> A   Right.
>
> Q   So these capital improvements that are both currently under contract and being planned in the future are really only necessary in order to expand and add water users to the system?
>
> MR. COLE: Object to form.
>
> A   They're certainly needed to expand a significant amount, --
>
> Q   (By Mr. Hieb) Um-hmm.
>
> A   -- but I believe they're also needed to provide improved service to existing customers.
>
> Q   Okay. But if they did nothing, incurred no more debt, didn't go make any of these capital improvements, they could adequately serve their existing customer base as long as there wasn't an increase in demand.
>
> A   Yes.

(Doc. 34-5, Schriever 84-85.)

Further, in order for Sioux's claim to be ripe, it must show that it faces a "certainly impending" injury. See <u>Public Water Supply District No. 8 of Clay County, Missouri v. City of Kearney, Missouri</u>, 401 F.3d 930, 932 (8th Cir. 2005) (refusing to reach issue whether water district was entitled to injunctive relief prohibiting City from supplying water to property owners because injury to water district was not "certainly impending" and so the case was not ripe). There is no "certainly impending" injury where Sioux is concerned. Instead, Sioux relies upon rank speculation about defendants' supposed threat to take over Sioux's existing customers. Sioux has *no evidence whatsoever* that such a threat actually exists.

Finally, as the Court intimated on page 7 of its Opinion (Doc. 52), Sioux has a remedy at law for those instances where defendants *actually* (not just hypothetically) seize Sioux's *actual* customers. That remedy is money damages.

## CONCLUSION

For these reasons, and based upon the evidence to be presented at the trial, defendants maintain that Sioux is neither entitled to money damages nor injunctive relief.

Respectfully submitted this 14th day of August, 2017.

```
                                   RICHARDSON, WYLY, WISE, SAUCK
One Court Street                    & HIEB, LLP
Post Office Box 1030
Aberdeen, SD  57402-1030
Telephone No. 605-225-6310        By /s/ Zachary W. Peterson
e-mail: zpeterson@rwwsh.com            Attorneys for Defendants
```

**CERTIFICATE OF SERVICE**

       The undersigned, one of the attorneys for defendants, hereby certifies that on the 14th day of August, 2017, a true and correct copy of **DEFENDANTS' PRE-TRIAL BRIEF** was served electronically through the District Court CM/ECF filing system on:

(jcole@zdclaw.com)
(bill@zdclaw.com)
Mr. Jeffrey A. Cole
Mr. William D. Sims
Zimmer, Duncan & Cole, LLP
Attorneys at Law
5000 South Broadband Lane, #119
Sioux Falls, SD  57108


                                                /s/ Zachary W. Peterson